IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.    1:20-CR-199 (LEK) (DJS) |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL T. MANN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| PIONEER BANK, | ) | |
| | ) | |
| Third-Party Claimant. | ) | |
| | ) | |

**Government's Memorandum of Law in Support of its Motion to Dismiss**

Respectfully submitted,

June 28, 2021                         ANTOINETTE T. BACON
                                      Acting United States Attorney


                                      By: /s/ Michael Barnett
                                      Michael Barnett
                                      Cyrus P.W. Rieck
                                      Emily C. Powers
                                      Assistant United States Attorneys
                                      Bar Roll Nos. 519140, 518933, 5139205

Government's Memorandum of Law in Support of its Motion to Dismiss

## Table of Contents

**Factual and Procedural Summary** ................................................................2

   A.  Michael Mann's Criminal Conduct ..................................................................2

   B.  Mann's Guilty Plea and the Preliminary Order of Forfeiture ................................................4

   C.  Third-Party Claims ..................................................................5

**Applicable Law and Legal Standards** ................................................................6

   A.  Criminal Forfeiture ..................................................................6

      1.  A petitioner must have Article III and statutory standing to contest forfeiture .................7

      2.  Only two categories of interests are superior to the Government's interest in forfeitable property ..................................................................8

   B.  Legal Standard for a Motion to Dismiss ..................................................................9

**Argument** ................................................................12

   A.  Pioneer Lacks Standing and Fails to State an Adequate Basis for its First Claim Because it has Already Exercised its Setoff Rights ..................................................................12

   B.  Pioneer Additionally Fails to State an Adequate Basis for its First Claim Because it has Failed to Sufficiently Allege an Interest in the Subject Accounts ................................14

   C.  Pioneer Lacks Standing and Fails to State an Adequate Basis for its Second Claim Because it Lacks a Perfected Security Interest in the Subject Accounts ..........................................17

**Conclusion** ................................................................21

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.    1:20-CR-199 (LEK) (DJS) |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL T. MANN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| PIONEER BANK, | ) | |
| | ) | |
| Third-Party Claimant. | ) | |
| | ) | |

### Government's Memorandum of Law in Support of its Motion to Dismiss

The Government respectfully submits this memorandum of law in support of its motion to dismiss the third-party petition of Pioneer Bank ("Pioneer"). Pioneer's petition should be dismissed because Pioneer lacks standing and fails to state a claim upon which relief can be granted.

Pioneer seeks all of the funds the Government has seized from defendant Michael T. Mann ("Mann") – $14,522,474.90, formerly contained within three Bank of America accounts – as well as 30,000 shares of Pioneer stock the Government also seized from Mann. In pleading guilty, Mann agreed to forfeit these assets to the Government, and the Court has entered a Preliminary Order of Forfeiture in the Government's favor.

The Government intends to arrange for these assets to be distributed to Mann's victims, including Pioneer. *See generally* 21 U.S.C. § 853(i). Pioneer, which was Mann's primary bank, has other designs – it seeks all of the assets for itself, leaving Mann's other victims, including hundreds of small businesses and hundreds of people, without any hope of recovering even a small

1

percentage of their losses. Pioneer, which has already recovered nearly $16 million through self-help, seeks to jump the line and put itself ahead of all other victims.

Pioneer's petition should be dismissed at the pleading stage, before it delays forfeiture for months or longer.[1]  Even accepting its allegations as true, Pioneer fails to demonstrate that it has standing to bring its claims, nor has it alleged a claim of ownership over the assets superior to that of the Government.

If the Court denies the Government's motion to dismiss, the Government will seek the Court's leave to conduct discovery, including into Pioneer's claim that – in August 2019, when Mann was using Pioneer accounts to kite millions of dollars a day – it had no actual or constructive knowledge of Mann's fraud.

## Factual and Procedural Summary

### A. Michael Mann's Criminal Conduct[2]

Mann owned and operated ValueWise Corporation ("ValueWise") and subsidiary companies based in Clifton Park, New York.  Mann PA at ¶ 5(a).  From at least 2013 through September 2019, Mann perpetrated a massive scheme to defraud that caused more than $100 million in actual losses.  *Id*. at ¶¶  5(b)-(c), 1(d).

Mann fraudulently obtained millions of dollars in loans from a total of three (3) financing companies (the "Financing Companies").  Mann PA at ¶ 5(d).  He told the Financing Companies

---

[1] Mann will be sentenced on August 4, 2021.  Dkt. no. 49.

[2] These facts are taken from Mann's plea agreement ("Mann PA," dkt. no. 30), to which Pioneer's petition repeatedly refers.  *See*, *e.g.*, Petition at ¶¶ 3-4, 7, 45.  Although Pioneer's petition does not specifically incorporate the Mann plea agreement by reference, the Court can still consider it on a motion to dismiss because Pioneer repeatedly cites and refers to it.  *See Broder* v. *Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005).

that several of his companies provided services to UnitedHealth Group Incorporated ("UHG")
and its subsidiary, OptumInsight Inc. ("Optum"), and as a result had receivables due and owing
from UHG/Optum. *Id*. at ¶ 5(d)-(f).  Mann persuaded the Financing Companies to lend his
companies millions of dollars against these non-existent receivables. *Id*.  The Financing
Companies suffered a combined $17,100,204.50 in losses as a result of Mann's fraud. *Id*. at
¶ 5(m).

Mann perpetrated a similar scheme against Pioneer and its lending partners ("the
Banks").  He fraudulently obtained a line of credit ("LOC"), which grew to $42 million as of
August 12, 2019, by lying about his companies' revenues, receivables, and other assets, and by
disguising his companies' true sources of funds (e.g. the Financing Companies) and the fact that
he was using the LOC to pay down the loans from the Financing Companies.  Mann PA at
¶ 5(o)-(q).  The Banks suffered a combined $35,839,912.81 in losses as a result of Mann's fraud.
Mann PA at ¶ 5(u).

Mann also defrauded, among others:

- Bank of America ("BANA"), by fraudulently obtaining corporate credit cards for
  employees of ValueWise and several of its subsidiaries, resulting in $850,545.00 in
  losses to the bank.  Mann PA at ¶ 5(v)-(z).

- Cachet Financial Services, an Automated Clearing House ("ACH") processor, by
  fraudulently diverting payroll monies into accounts he maintained at Pioneer.  Mann
  PA at ¶ 5(e)(e).  Pioneer then froze these monies once Mann's fraud came to light,
  and Cachet ended up paying a total of approximately $7,219,341.34 to the employees
  of MyPayrollHR.com LLC's customers.  *Id*.  Mann also abused his companies'
  access to the ACH services provided by Cachet, using those services to rapidly

3

transfer (i.e., "kite") millions of dollars among his accounts at Pioneer and BANA. *Id.* at ¶ 5(f)(f). Cachet lost an additional $19,199,175.74 because, on August 30, 2019, it used its own trust account monies to effect rapid transfers of funds at Mann's instruction, and was not able to debit these monies from Mann's accounts at Pioneer and BANA, which had been frozen. *Id.* at ¶ 5(g)(g).

- National Payment Corporation ("NatPay"), by fraudulently diverting tax monies into accounts that he maintained at Pioneer. Mann PA at ¶ 5(h)(h)-(k)(k). Pioneer then froze these monies once Mann's fraud came to light, and NatPay ended up paying a total of approximately $3,835,425.69 to taxing authorities on behalf of Mann's customers. Id. at ¶ 5(l)(l).

- Southwestern Payroll Service, Inc. ("Southwestern Payroll"), by fraudulently diverting tax monies into accounts that he maintained at Pioneer. Mann PA at ¶ 5(h)(h)-(k)(k). Pioneer then froze these monies once Mann's fraud came to light, resulting in at least $16,994,188.24 in losses. Id. at ¶ 5(m)(m).

**B. Mann's Guilty Plea and the Preliminary Order of Forfeiture**

Mann pled guilty, on August 12, 2020, to a 12-count information charging conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1349, 1343 (Count 1); aggravated identity theft, in violation of 18 U.S.C. § 1028A (Count 2); bank fraud, in violation of 18 U.S.C. § 1344 (Counts 3 through 11); and filing a false tax return, in violation of 26 U.S.C. § 7206(1) (Count 12). Mann PA at ¶ 1(a).

Mann agreed to pay $101,038,793.31 in restitution to his victims (Mann PA at ¶1(d)), and to forfeit, as proceeds of his fraud crimes, the following:

- Bank of America account bearing an account number ending in 9506

4

("9506 Account")
Account holder: ValueWise Corporation d/b/a Primacy Search Group
Balance: $1,444,975.16

- Bank of America account bearing an account number ending in 6843
  ("6843 Account")
  Account holder: ValueWise Corporation d/b/a Optix Consulting
  Balance: $5,363,936.77

- Bank of America account bearing an account number ending in 6103
  ("6103 Account")
  Account holder: Heutmaker Business Advisors LLC
  Balance: $7,713,562.99

- 30,000 common shares of Pioneer Bancorp Inc., owned by MyPayrollHR.com LLC
  ("Pioneer Shares")

- Vehicle – a 2020 Jeep Gladiator, color black, Vehicle Identification Number
  1C6HJTFG4LL115264

- A money judgment in the amount of $101,038,793.31.

Mann PA at ¶ 1(e).  These are all criminal proceeds from the wire fraud conspiracy, and the

substantive acts of bank fraud, to which Mann pled guilty.  *See* Mann Information (dkt. no. 28) at

pp. 11-12.

On August 26, 2020, the Court entered a Preliminary Order of Forfeiture.  Dkt. no. 35.

**C. Third-Party Claims**

Two victims have brought third-party petitions seeking turnover of certain of the seized

assets.

On May 13, 2021, Cachet filed a petition, pursuant to 21 U.S.C. § 853(n)(2), claiming all

of the funds in the 6843 Account and the 6103 Account, totaling $13,077,499.80.  Dkt. no. 51.

Cachet asserts that these funds are Cachet's, specifically that these funds are traceable to monies

that Mann fraudulently caused it to send to the 6843 Account and the 6103 Account.  The

Government will respond to Cachet's petition in a separate filing.

5

On May 14, 2021, Pioneer filed a petition, pursuant to 21 U.S.C. § 853(n)(2), claiming all of the funds in the 9506 Account, the 6843 Account and the 6103 Account (collectively, the "Subject Accounts"), totaling $14,522,474.90, as well as the Pioneer Shares (with the Subject Accounts, the "Subject Assets").  Dkt. no. 54.  Pioneer alleges (1) that it is a bona-fide purchaser for value of a "property interest/security interest" in the funds within the Subject Accounts as a result of Mann's check-kiting scheme (hereinafter, "Pioneer's First Claim"), and (2) that it is a bona-fide purchaser for value of all of the Subject Assets, pursuant to an August 12, 2019 Loan and Security Agreement it had with ValueWise and affiliates ("Pioneer's Second Claim").

<u>**Applicable Law and Legal Standards**</u>

**A.  Criminal Forfeiture**

Fraud proceeds are subject to forfeiture to the United States.  18 U.S.C. § 981(a)(1)(C) (incorporating 18 U.S.C. § 1956(c)(7) (in turn incorporating 18 U.S.C. § 1961(1))).  The Government may seek, and the Court must order, the forfeiture of such property in a criminal case involving fraud crimes that give rise to forfeiture.  28 U.S.C. § 2461(c).  The procedures for criminal forfeiture are governed by 21 U.S.C. § 853 and Federal Rule of Criminal Procedure 32.2.  28 U.S.C. § 2461(c).

When property is subject to forfeiture to the United States, title to such property vests in the United States upon the commission of the criminal acts giving rise to forfeiture.  18 U.S.C. § 981(f); 21 U.S.C. § 853(c).  Under this principle, known as the relation-back doctrine, "the government's interest in the proceeds of a fraud vests as soon as those proceeds come into existence, and is therefore superior to that of any subsequent third-party recipient of those funds (unless the third party is a bona fide purchaser for value)." *United States* v. *Daugerdas*, 892 F.3d 545, 548 (2d Cir. 2018).  In other words, "any proceeds that ensue from the criminal act belong

to the government from the moment that they come into existence." *United States v. Watts*, 786 F.3d 152, 167 (2d Cir. 2015). Accordingly, the Government's interests in forfeitable property trump those of any interests that are subsequently acquired, except for those of a bona-fide purchaser.

        1.   A petitioner must have Article III and statutory standing to contest forfeiture

A third party, referred to by statute as a petitioner, may contest the Government's forfeiture of property in a criminal case through an ancillary proceeding. *See* 21 U.S.C. § 853(n); Fed. R. Crim. P. 32.2(c).

To establish Article III standing, a petitioner must show an "actual or imminent injury – not a hypothetical, conjectural, or abstract injury." *United States v. Lazarenko*, 469 F.3d 815, 822 (9th Cir. 2006).

In order to state a cognizable claim in the ancillary proceeding, a petitioner must assert a "legal interest" in the forfeitable property. 21 U.S.C. § 853(n)(2). This requirement is often referred to as statutory standing. *See, e.g.*, *United States* v. *Lin Hu*, No. 08-cr-425 (BMC), 2011 WL 5884918, at *3 (E.D.N.Y. Nov. 23, 2011) (unpub.) ("The Second Circuit has interpreted this language as a statutory standing requirement which prevents a claimant from petitioning the court under § 853(n)(2) unless the claimant can demonstrate the requisite 'legal interest' in the forfeited assets") (citing *United States v. Ribadeneira*, 105 F.3d 833 (2d Cir.1997)). The legal interest must relate to specific, forfeitable property. By contrast, a petitioner who fails to state an interest in specific assets, but rather propounds interests that amount to generalized claims against the defendant, such as an unsecured creditor, lacks standing to pursue a claim in the ancillary proceeding. *See Ribadeneira*, 105 F.3d at 835-36; *DSI Assocs. LLC* v. *United States*, 496 F.3d 175, 184 (2d Cir. 2007).

A third-party petition must "set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought."  21 U.S.C. § 853(n)(3).

    2.   <u>Only two categories of interests are superior to the Government's interest in forfeitable property</u>

Once a party demonstrates statutory standing, it can overcome the Government's criminal forfeiture of property by demonstrating that it falls within one of two categories:

> (A)    the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property . . .; or

> (B)    the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture . . .

21 U.S.C. § 853(n)(6).

A third party satisfies the criteria of paragraph §853(n)(6)(A) if it had an interest in the property "at the time of the commission of the acts which gave rise to the forfeiture of the property," *id.*; in other words, at the time of the offense.  Because a priority of ownership claim under subsection (6)(A) embodies the relation-back doctrine, a third party that had a legal interest in the forfeited property before the underlying crime was committed may prevail in the ancillary hearing on the ground that it had an interest in the property before the government's interest

vested (i.e., when the crime was committed).  *See United States* v. *Catala*, 870 F.3d 6, 10 (1st

Cir. 2017).

A third party qualifies under subsection 6(B) if it acquired its interest after the offense.  In

that situation, a claimant must show that it is a bona-fide purchaser for value (hereinafter, a

"BFP") in order to succeed.

Federal law determines whether a petitioner has a BFP interest sufficient to overcome

forfeiture of property to the Government, whereas a property interest itself is defined by state

law.  *See Willis Mgmt. (Vermont), Ltd.* v. *United States*, 652 F.3d 236, 242 (2d Cir. 2011).

The third-party petitioner bears the burden of proving its interest by a preponderance of

the evidence.  *See* 21 U.S.C. § 853(n)(6).  If the petitioner cannot meet the requirements of either

subsection 6(A) or 6(B), it cannot demonstrate an interest in property subject to forfeiture.

Courts cannot carve out additional grounds for relief no matter how innocent or sympathetic the

petitioner may be.  *See, e.g., United States* v. *Hooper*, 229 F.3d 818, 822-23 (9th Cir. 2000)

(given the clear direction in section 853(n)(6) limiting recovery to two categories of claimants,

courts are not at liberty to create additional grounds for relief); *United States* v. *Kennedy*, 201

F.3d 1324, 1335 (11th Cir. 2000) (alternative grounds set forth in sections 853(n)(6)(A) and (B)

are the only grounds for recovery in ancillary proceedings).

B.  **Legal Standard for a Motion to Dismiss**

An ancillary proceeding, although occurring in the context of criminal forfeiture, closely

resembles a civil action.  *See Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004)) (citing

Advisory Committee notes to Federal Rule of Criminal Procedure 32.2(c), which explain that

because ancillary hearings may involve complex issues requiring years to resolve, "procedures

akin to those available under the Federal Rules of Civil Procedure," such as motions to dismiss, "should be available to the court and the parties to aid in the efficient resolution of the claims").

Therefore, prior to the parties conducting discovery on their petitions, the Government may move to dismiss a petition for lack of standing or for failure to state a claim. Rule 32.2(c)(1)(A) provides that in "the ancillary proceeding, the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason. For purposes of the motion, the facts set forth in the petition are assumed to be true." *See also*, *e.g.*, *United States v. Swartz*, 391 F. Supp. 3d 199 (N.D.N.Y. 2019) (dismissing petition for failure to state a plausible claim).

The familiar standard applicable to a motion to dismiss is set forth in the Supreme Court's decisions in *Ashcroft* v. *Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544 (2007). A motion to dismiss must be granted if the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

The Court need not, however, accept as true a legal conclusion or a legal conclusion couched as a factual allegation. *See Iqbal*, 556 U.S. at 678-79 (citing *Twombly*, 550 U.S. at 555). Ultimately, whether a complaint states a plausible claim for relief is a context-specific determination that requires "the reviewing court to draw on its judicial experience and common

10

sense," and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 679.

In determining whether a petition in an ancillary proceeding states a claim, the Court must assume its allegations to be true. *See* Fed. R. Crim. P. 32.2(c)(1)(A). A petitioner is therefore bound by the allegations in its complaint. *See Official Comm. of Unsecured Creditors of Color Tile, Inc.* v. *Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quoting *Soo Line R.R. Co.* v. *St. Louis Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997)) ("'[P]laintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts,' and 'judicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told to a court by the most formal and considered means possible'"); *see also Jones* v. *Bock*, 549 U.S. 199, 215 (2007) ("[i]f the allegations [in a complaint], for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim").

Additionally, the Court may consider not only the facts alleged in the petition, but also "documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels* v. *Air Trans. Local,* 992 F.2d 12, 15 (2d Cir. 1993)*; see also Broder*, 418 F.3d at 196 (2d Cir. 2005) ("Where a plaintiff has 'reli[ed] on the terms and effects of a document in drafting the complaint,' and that document is thus 'integral to the complaint,' we may may consider its contents even if it is not formally incorporated by reference") (quoting *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

11

## Argument

Pioneer's petition should be dismissed because Pioneer lacks standing and fails to state a claim upon which relief can be granted.

The First Claim fails because (a) Pioneer has already satisfied its claim by seizing more than $15 million from Mann's accounts at Pioneer and (b) Pioneer fails to sufficiently claim an interest in the Subject Accounts based on the alleged money transfers. The Second Claim fails because Pioneer has failed to allege that it has a perfected security interest in the Subject Assets that is superior to the Government's interest.

### A. Pioneer Lacks Standing and Fails to State an Adequate Basis for its First Claim Because it has Already Exercised its Setoff Rights

The First Claim fails as a matter of law, and should be dismissed at the pleading stage, because Pioneer has already remedied its overdraft losses by exercising its setoff rights, leaving it without any claim.

The First Claim is based on Pioneer's depository account losses.  Pioneer alleges that during a period of time when Mann was kiting millions of dollars back and forth between his Pioneer and BANA accounts, Pioneer funded transfers to Mann's accounts at BANA, in reliance on checks, drawn on BANA accounts, that BANA did not fulfill because it froze Mann's accounts.  Petition at ¶¶ 9-21.  To remedy this overdraft, in September 2019, Pioneer "took actions to recover a total of $15,975,018.25 from ValueWise Entity general deposit accounts at Pioneer[.]"  *Id*. at ¶ 27.  In other words, nearly two (2) years ago, Pioneer satisfied the setoff-based claim that it now asserts in this Court as a basis for a priority interest in the Subject Accounts.

Pioneer has no claim because it has already satisfied its claim.  Pioneer has neither Article III nor statutory standing to assert its First Claim, and states no claim for which relief can be granted, because its supposed injury is "hypothetical," "conjectural," and "abstract." *Lazarenko*, 469 F.3d at 822.

Pioneer attempts to circumvent this straightforward conclusion by asserting a hypothetical possibility that it will lose one or more lawsuits challenging its use of its setoff rights.  Pioneer states that "[i]f … the lawsuits … fail, Pioneer Bank's security interest in the 36 BOA Checks and their proceeds will have been satisfied."  Petition ¶ 28.  Translation: Pioneer's claim has been satisfied as of the date of its petition, because none of the lawsuits has succeeded.  Pioneer's First Claim must be assessed as of the date of its filing, not on some future date when, hypothetically, it may lose one or more of the lawsuits brought against it.

Courts routinely reject third-party claims to seized assets that, like Pioneer's First Claim, are hypothetical, contingent, not vested, or not ripe.  *See, e.g.*, *United States v. Church & Dwight Company*, 510 Fed. Appx. 55, 57-58 (2d Cir. 2013) (unpub.) (claimant with a contingent interest based on the settlement of a private lawsuit lacked standing because the contingency was not satisfied); *United States v. Burge*, 829 F. Supp. 2d 664, 667-68 (C.D. Ill. 2011) (granting Rule 32.2(c) motion to dismiss for failure to state a claim where claim filed by defendant's wife failed to allege a present interest, as opposed to a prospective, future interest, under state law in real property titled solely in defendant's name); *United States v. Brinton*, 880 F. Supp. 2d 1158, 1160 (D. Utah 2012) (granting motion to dismiss and explaining that because the right of indemnity does not accrue or vest until damage occurs, defendant's malpractice insurer had no present interest in defendant's property, even though it could have an indemnity claim in the future); *United States v. Kluding*, 14-cr-123 (RJC), 2020 WL 5920269 (W.D. Okla. Oct. 6, 2020)

13

(unpub.) (explaining that under § 853(n)(2), claimant has the burden of showing that he has a "vested legal interest" in the forfeited property and dismissing claim for lack of standing because, under state law, claimant had only a contingent interest in the assets of a revocable trust); *United States v. Satava*, 99 F.Supp.3d 761, 765-66 (N.D. Ohio 2015) (holding that because under state law, wife acquired no interest in husband's retirement account until divorce was final, and because divorce was still pending when court issued an order forfeiting account as a substitute asset, wife could not prevail under § 853(n)(6)(A)).

Pioneer took its shot.  In September 2019, Pioneer chose its remedy – exercising its setoff rights with respect to the Mann accounts under its own control – and cannot now claim the Subject Accounts based on the entirely speculative possibility that a court, at some future date, may find that Pioneer improperly exercised its setoff rights.   Pioneer's First Claim must be assessed as of the date of its filing, and must be dismissed because Pioneer – by its own admission – has already satisfied that claim.

B. **Pioneer Additionally Fails to State an Adequate Basis for its First Claim Because it has Failed to Sufficiently Allege an Interest in the Subject Accounts**

The First Claim also fails, and should be dismissed at the pleading stage, because Pioneer has not sufficiently alleged an interest in the Subject Accounts.

Pioneer alleges that "it has a fully perfected security interest in the $15,588,000 in proceeds of the 36 BOA Checks, wherever those proceeds are and in whatever form those proceeds take," and that on August 29, 2019, all of these proceeds were "deposited into an account ending in 4559 held by ValueWise at Bank of America" (the "4559 Account").  Petition at ¶¶ 20-21.  But the Government has neither seized nor sought to forfeit the 4559 Account, and

14

Pioneer does not allege any plausible basis for concluding that "proceeds of the 36 BOA Checks" entered the Subject Accounts.

Pioneer attempts to bridge this gap by alleging that "[u]pon information and belief, through a series of transactions after August 29, 2019," the "proceeds of the 36 BOA Checks" were somehow transferred into the Subject Accounts, and moreover that the funds in the Subject Accounts "are entirely comprised of the[se] proceeds."  Petition at ¶¶ 22-23.

Pioneer does not explain how it arrived at this conclusion, and by making a claim only "upon information and belief," Pioneer makes plain that it is engaging in speculation that falls short of the pleading standard.  *See, e.g., United States v. Fabian*, 764 F.3d 636, 638 (6th Cir. 2014) (affirming dismissal of claim that asserted only a "conclusory legal interest" under § 853(n)(3)); *United States v. Sharma,* 18-cr-340 (LGS), 2021 WL 861353, *6 (S.D.N.Y. March 8, 2021) (unpub.) (granting Government's motion to dismiss where claimant's "wholly conclusory" petition failed to demonstrate a "legal interest in particular and specific forfeited assets"); *United States v. Chan*, 09-cr-13 (JGM), 2009 WL 5195872 (D. Vt. Dec. 21, 2009) (unpub.) (claimant contesting forfeiture of cash seized from the defendant must do more than assert his ownership in a conclusory fashion; where money was found in defendant's rental car wrapped in fabric softener sheets, claimant must explain how his money got there; motion to dismiss granted).

Pioneer provides no basis – much less a plausible basis – for its claim that the "proceeds of the 36 BOA Checks" entered the Subject Accounts on or after August 29, 2019.  At most, Pioneer alleges only a security interest in the 4559 Account, which the Government has neither seized nor sought to forfeit.

15

Moreover, Mann's plea agreement, which Pioneer references in its petition,[3] states that at the same time Mann was kiting checks between his Pioneer and BANA accounts (including the 4559 Account, as alleged in Pioneer's First Claim), he also used Cachet's ACH services to route $7,219,341.34 in payroll funds through his Pioneer accounts; and further used Cachet's services to transfer approximately $19,199,175.74 – money belonging to Cachet – among his accounts at Pioneer and BANA, as well as from his accounts to those of third parties to whom he owed money.  Mann PA at ¶¶ 5(a)(a)-(g)(g).

Given the volume of money being transferred and kited in and around August 29, 2019, it is implausible for Pioneer to allege, in the most conclusory fashion, that the "proceeds of the 36 BOA Checks" were somehow transferred into the Subject Accounts and that "[t]he funds in the Bank of America Accounts that Mann forfeited to the United States are entirely comprised of the proceeds of the 36 BOA Checks."  Petition at ¶¶ 22-23.

Pioneer has had nearly two (2) years – since September 2019 – to determine whether "proceeds of the 36 BOA Checks" entered the Subject Accounts.  Pioneer could have obtained BANA account statements from, among others, Mann himself, with whom it entered into a consent judgment in Albany County Court in November 2019.  *See* Petition at ¶ 44.  In that litigation, Pioneer could have also subpoenaed BANA for the account records.  *Compare* Cachet Petition (dkt. no. 51) at 6 n. 4 (noting that in its lawsuit against Mann and MyPayrollHR, Cachet subpoenaed BANA for records for the 6103 Account and 6843 Account).

---

[3] Although Pioneer's petition does not specifically incorporate the Mann plea agreement by reference, the Court can still consider it on a motion to dismiss because Pioneer repeatedly cites and refers to it.  *See Broder*, 418 F.3d at 196.

16

If Pioneer's threadbare allegations were all that would be required to state a claim, then any of Mann's many victims could assert "upon information and belief" that they have an interest in the Subject Accounts on the theory that money a victim gave to Mann in late August 2019 must have entered the Subject Accounts. Pioneer's pleading, if accepted, could create dozens of claimants on the barest of allegations, and hold up the forfeiture and distribution of the Subject Assets for years.

To state a claim, Pioneer was required to allege "the time and circumstances of [its] acquisition of the right, title, or interest in the property," 21 U.S.C. § 853(n)(3), but it has failed to do so. Accordingly, the First Claim should be dismissed for failure to state a claim.

## C. Pioneer Lacks Standing and Fails to State an Adequate Basis for its Second Claim Because it Lacks a Perfected Security Interest in the Subject Assets

Pioneer's Second Claim fails, and should be dismissed at the pleading stage, because Pioneer has not alleged that it holds a perfected security interest in the Subject Assets, comprised of the Subject Accounts (deposit accounts) and the Pioneer Shares (investment property). Because Pioneer does not allege a perfected security interest, the Government has a superior interest in the Subject Assets (which fully vested when Mann started his criminal activity).

The Government's interest in criminal property vested at the time of the offenses giving rise to the forfeiture, and the Government's interest in property involved in a conspiracy vested when the first overt act occurred in furtherance of the conspiracy. *See*, *e.g.*, *United States v. Nava*, 404 F.3d 1119, 1124 (9th Cir. 2005) (Government's interest vested under section 853(c) at the onset of the drug conspiracy that the property facilitated); *United States v. Dupree*, 919 F. Supp.2d 254, 269 (E.D.N.Y. 2013) (Government's interest vested before the assignment of the property to claimant because it vested at the onset of the conspiracy to commit bank, mail and

17

wire fraud).  The Government's interest in the Subject Assets, therefore, vested at the outset of Mann's conspiracy, in 2013.

A security interest in a deposit account "may be perfected only by control" of the account.  N.Y. UCC §§ 9-312(b)(1), 9-314(a).  *See also* N.Y. UCC § 9-104(a); *Wachovia Bank Nat'l Ass'n v. Encap Golf Holdings*, LLC, 690 F. Supp. 2d 311, 338 n. 6 (S.D.N.Y. 2010).

A security interest in investment property may be perfected by the filing of a financing statement, or by control of the property.  N.Y. UCC §§ 9-312(a), 9-314(a).  *See also Citigroup Glob. Markets, Inc. v. KLCC Invs., LLC*, 06-cv-5466 (LAP), 2015 WL 5853916, at *11 (S.D.N.Y. Sept. 28, 2015) (unpub.).

Pioneer alleges that it holds a security interest in any and all assets of the companies that signed the August 12, 2019 Loan and Security Agreement; these companies include ValueWise and Heutmaker Business Advisors LLC, the holders of the Subject Accounts, and MyPayrollHR.Com LLC, the owner of the Pioneer Shares.  Petition at ¶ 29.

Pioneer does not, however, allege that it has perfected its security interest in either the Subject Accounts or the Pioneer Shares.[4]

Accordingly, even if Pioneer is a BFP based on its alleged security interest in the Subject Assets – and the Government in no way concedes that it is – Pioneer's interest is still inferior to the Government's, which fully vested when Mann's crimes began.  Judge Rakoff concluded as much in *United States v. Chowaiki*, 369 F. Supp. 3d 565, 575 (S.D.N.Y. 2019).  In that case, multiple parties asserted interests in a Picasso painting, *Le Clown*.  *Id.* at 569.  On the

---

[4] Tellingly, while Pioneer thrice alleges a "perfected security interest" with respect to its First Claim, *see* Petition at ¶¶ 15, 20, 26, it does not do so at all with respect to its Second Claim.

Government's motion to dismiss, Judge Rakoff found that although a third-party claimant sufficiently asserted a security interest in *Le Clown* that could make it a BFP, the claimant acknowledged that it did not have physical possession of the painting at the time the Government seized it, and failed to allege that it either perfected or recorded its security interest.  *Id.* at 575.

Judge Rakoff granted the Government's motion to dismiss, finding that "[t]he Government's interest in forfeited property is 'something like [that of] a secured creditor with a lien on the defendant's tainted assets superior to that of most any other party.'"  *Chowaiki*, 369 F. Supp. 3d at 575 (quoting *Luis v. United States*, 136 S. Ct. 1083, 1092, (2016)); *see also* N.Y. UCC § 9-322(a)(3) (secured creditor has priority over subsequent, unperfected security interests).

In other words, Judge Rakoff found that the Government had priority over a creditor with a secured but unperfected interest in the property sought to be forfeited – which is the situation in this case as well, under the best-case scenario for Pioneer.  *Accord Ribadeneira*, 105 F.3d at 836 (affirming the district court's observation that the claimant was not a BFP "'unless they have already secured a judgment against the debtor and perfected a lien against a particular item'") (quoting *United States v. Ribadeneira*, 920 F. Supp. 553, 555 (S.D.N.Y. 1996)); *United States v. Madoff*, 09-cr-213 (DC), 2012 WL 1142292, *5 (S.D.N.Y. April 3, 2012) (unpub.) (dismissing law firm's BFP claim over seized funds because it failed to perfect its lien); *United States v. Nnaji*, 05-cr-70120 (BAF), 2005 WL 1049905, *1 (E.D. Mich. Apr. 22, 2005) (persons who loaned money to defendant to improve his home, but did not record a lien against the property, were unsecured creditors without standing to contest the forfeiture of the property); *United States v. One 1987 Cadillac DeVille*, 774 F. Supp. 221, 223-24 (D. Del. 1991) (granting summary judgment in civil forfeiture action, concluding that an unperfected security interest in a car was

19

insufficient to defeat forfeiture); *United States v. One 1965 Cessna 320C Twin Engine Airplane*, 715 F. Supp. 808, 812-13 (E.D. Ky. 1989) (granting summary judgment in civil forfeiture action, concluding that unperfected security interest in an airplane was insufficient to defeat forfeiture).[5]

Pioneer cites a single case, *U.S. v. Huntington Nat. Bank*, 682 F.3d 429 (6th Cir. 2012), in support of its claim to priority BFP status.  In *Huntington*, the Sixth Circuit concluded that BFP status could be predicated on a security interest in a bank account, but it dealt with a single account over which the claimant (Huntington) had control and, thus, a perfected security interest. *See id*. at 432 (noting that Huntington asserted a claim to Huntington Bank Account Number XXXXXXX0935); *U.S. v. Huntington Nat'l Bank*, 574 F.3d 329, 330 (6th Cir. 2009) (prior court of appeals decision involving the same third-party claim, which noted that "Huntington filed a claim, alleging that a perfected security interest permitted it to retain the account"); *see also* UCC §§ 9-312(b)(1), 9-314(a) (a security interest in a deposit account "may be perfected only by control" of the account).  *Huntington* does not help Pioneer, which does not allege a perfected security interest.

Because Pioneer has not alleged a perfected security interest in any of the Subject Assets in relation to the August 12, 2019 Loan and Security Agreement, the Second Claim should be dismissed for lack of standing and failure to state a claim.  As a matter of law, Pioneer's BFP status, if any, would still be subordinate to the Government's right to forfeit the assets.  Because of the relation back doctrine, the Government has a fully vested interest in Mann's fraud

---

[5] The Michigan, Delaware and Kentucky cases involved security interests in property acquired prior to the events giving rise to forfeiture, akin to claims made pursuant to § 853(n)(6)(A).  But the analysis is the same – because the petitioner had only an unperfected security interest or lien, it could not defeat the Government's forfeiture of the property.

proceeds that predates Pioneer's security interest, if any.  And because Pioneer does not allege that it perfected its security interest, it cannot establish priority BFP status as a matter of law, and the Government's interest is superior to that of Pioneer.  *See Chowaiki*, 369 F. Supp. 3d at 575.

## <u>Conclusion</u>

For the foregoing reasons, the Government respectfully asks that the Court dismiss Pioneer Bank's third-party petition pursuant to Rule 32.2(c)(1)(A).

June 28, 2021                              ANTOINETTE T. BACON
                                          Acting United States Attorney


                                          By: <u>/s/ Michael Barnett</u>
                                          Michael Barnett
                                          Cyrus P.W. Rieck
                                          Emily C. Powers
                                          Assistant United States Attorneys
                                          Bar Roll Nos. 519140, 518933, 5139205