UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

UNITED STATES OF AMERICA,

     -against-                       1:20-CR-199 (LEK/DJS)

MICHAEL T. MANN,

          Defendant,

     -and-

PIONEER BANK and CACHET
FINANCIAL SERVICES,

          Third-Party Claimants.

_____

<u>**MEMORANDUM-DECISION AND ORDER**</u>

## I.    INTRODUCTION

Pioneer Bank ("Pioneer" or "Pioneer Bank") and Cachet Financial Services ("Cachet") (together, "Petitioners") have filed petitions in which they assert claims to various assets identified in the preliminary order of forfeiture. Dkt. No. 54 ("Pioneer's Petition"); Dkt. No. 120 ("Cachet's Amended Petition") (together, "Petitions"); <u>see also</u> Dkt. No. 35 ("Preliminary Order of Forfeiture"). The Government has filed two separate motions to dismiss these Petitions. Dkt. No. 65-1 ("Motion to Dismiss Pioneer's Petition"); Dkt. No. 121 ("Motion to Dismiss Cachet's Amended Petition").

On October 14, 2022, the Honorable Daniel J. Stewart, United States Magistrate Judge, issued a Report-Recommendation addressing these motions to dismiss. Dkt. No. 132 ("Report-Recommendation"). In his Report-Recommendation, Judge Stewart has recommended that (1) the Motion to Dismiss Pioneer's Petition be denied in part and granted in part; (2) the Motion to

Dismiss Cachet's Amended Petition be denied, and (3) the matters that remain proceed to a hearing pursuant to 21 U.S.C. § 853(n). R. & R. at 2.

Now before the Court is Pioneer's objection to Judge Stewart's Report-Recommendation. Dkt. No. 135 ("Pioneer's Objection"). In particular, Pioneer objects to Judge Stewart's recommendation that its second claim be dismissed. See Pioneer's Obj. at 2. No other party objected to the Report-Recommendation within the time allotted by statute. See 28 U.S.C. § 636(b)(1). After the Court granted the Government two extensions, see Dkt. Nos. 138, 140, the Government filed a response to Pioneer's Objection, Dkt. No. 141 ("Government Response").

For the reasons set forth below, the Court affirms Judge Stewart's conclusions, but adopts different reasoning.

## II.    BACKGROUND

### A.  Factual Background

The following relevant facts are set forth (1) as alleged by the Government, see Dkt. No. 28 ("Charge Information") ¶¶ 1–47, (2) as stipulated by Defendant in his plea agreement, see Dkt. No. 30 ("Plea Agreement") at 6–18, (3) as alleged in Pioneer's Petition, see Pioneer's Pet. ¶¶ 3–54, and (4) as asserted in the Government's Motion to Dismiss Pioneer's Petition, see Mot. to Dismiss Pioneer's Pet. at 4–8.  The Court otherwise assumes familiarity with the facts as set forth by Judge Stewart in his Report-Recommendation. See R. & R. at 2–5.

Defendant was the owner and operator of ValueWise Corporation and various subsidiary companies, including several payroll companies. See Charge Info. ¶¶ 1, 7. From at least 2013 until September 2019, Defendant fraudulently obtained tens of millions of dollars in loans from banks and financing companies by misrepresenting the financial health of his companies. See Plea Agreement at 7. In particular, Defendant "overstated his companies' revenue and

receivables, as well as their business relationships and prospects, and created companies whose sole purpose was . . . to generat[e] fake invoices and . . . disguis[e] sources of funds." Id. Because Defendant was unable to repay these loans, he used new loans—also obtained through misrepresentation—to repay his older creditors. See id.

Defendant's relationship with Pioneer Bank started in 2009, when Defendant started using Pioneer Bank for deposits and credit. See Pioneer Pet. ¶ 8. On or about August 12, 2019, Pioneer Bank entered into a Loan and Security Agreement ("Loan Agreement") with Defendant. See id. ¶ 29. Pursuant to the Loan Agreement, "Pioneer Bank extended a $42 million revolving line of credit" to Defendant. Id. ¶ 30.

Section 2.1 of the Loan Agreement states:

> In consideration of [Pioneer Bank's] extending credit and other financial accommodations to or for the benefits of the Borrower, the Borrower hereby grants to [Pioneer Bank] a security interest in, a lien on and pledge and assignment of the Collateral (as hereinafter defined). The security interest granted by this Agreement is given to and shall be held by [Pioneer Bank] as security for the payment and performance of all Obligations, including, without limitation, all amounts outstanding pursuant to the Loan Documents.

Id. ¶ 35 (quoting Loan Agreement § 2.1). The Loan Agreement defines "Collateral" as

> all of the [Borrowers'] present and future right, title and interest in and to any and all of the personal property of the [Borrowers] whether such property is now existing or hereafter created, acquired or arising and wherever located from time to time, including without limitation: (i) accounts; (ii) chattel paper; (iii) goods . . . (viii) instruments; (ix) investment property; (x) documents . . . (xii) deposit accounts . . . (xiv) general intangibles; (xv) supporting obligations; and (xvi) records, of, accession to and proceeds and products of the foregoing.

Id. ¶ 36 (quoting Loan Agreement § 2.2(d)).

Separately, on August 29, 2019, Defendant deposited thirty-six checks totaling $15,588,000 written from three Bank of America Accounts ("36 BOA Checks" or "BOA

3

Checks") into twelve accounts at Pioneer Bank. See id. ¶ 9. On the basis of this deposit, Pioneer

extended $15,588,000 worth of provisional credit to Defendant that same day. See id. ¶ 11.

Defendant immediately used this credit to issue new Pioneer Bank checks in the amount of

$18,043,00. See id. The following day, on August 30, 2019, Bank of America dishonored the 36

BOA Checks. See id. ¶ 14. Because Defendant had "already withdrawn and applied the

provisional credit" in the form of the new checks, Defendant's accounts became overdrawn, and

Pioneer Bank incurred a loss of $15,588,000. Id.

On September 11, 2019, Pioneer Bank notified Defendant of multiple defaults under the

Loan Agreement and demanded payment in full. See id. ¶ 42. Nearly two weeks later, on

September 23, 2019, "[Defendant] was arrested and charged with bank fraud." Id. ¶ 41. Pioneer

Bank claims that it was "unaware of any crimes or fraud by [Defendant], and Pioneer Bank was

without reasonable cause to believe that the Borrowers' Collateral or the Subject Property was

subject to forfeiture" when it acquired a security interest in the collateral of the Loan Agreement.

Id. ¶ 47.

### B. Procedural History

Pursuant to Defendant's plea agreement, the Preliminary Order of Forfeiture was issued

by this Court on August 26, 2020. See Preliminary Order of Forfeiture at 6. As part of that

agreement, Defendant agreed to forfeit, *inter alia*, (1) a Bank of America account bearing an

account number ending in 9506, with a balance of $1,444,975.16; (2) a Bank of America account

bearing account number ending in 6843, with a balance of $5,363,936.77; (3) a Bank of America

account bearing an account number ending in 6103, with a balance of $7,713,562.99; and (4)

30,000 common shares of Pioneer Bank ("Pioneer Shares"). See id. at 1–2.

On May 13, 2021, Cachet filed a petition with this Court pursuant to 21 U.S.C. § 853(n)(2) for a hearing to adjudicate Cachet's interest in the Bank of America accounts ending in 6843 and 6103. Dkt. No. 51. Cachet alleged it had legal interest in the property superior to that of the Government pursuant to 21 U.S.C. § 853(n)(6)(A). Id. ¶ 20. On February 22, 2022, Cachet filed an amended petition, which is presently before the Court. See Cachet's Am. Pet. at 13.

On May 14, 2021, Pioneer filed its petition pursuant to 21 U.S.C § 835(n)(2) for a hearing to adjudicate Pioneer's interest in Bank of America accounts ending in 9506, 6843, and 6103, as well as 30,000 common shares of Pioneer Bancorp Inc. See Pioneer's Pet. ¶¶ 49–51.

On June 28, 2021, the Government filed a motion to dismiss Pioneer's Petition. See Mot. to Dismiss Pioneer's Pet. at 23. On March 8, 2022, the Government filed its motion to dismiss Cachet's Amended Petition. See  Mot. to Dismiss Cachet's Am. Pet. at 14. Both Pioneer and Cachet have filed responses to these motions, see Dkt. Nos. 81, 122, and the Government has filed replies, see Dkt. Nos. 102, 126.

### C.  The Parties' Positions and the Report-Recommendation

In its Petition, Pioneer asserts two claims to the forfeited property. First, Pioneer argues that it was the bona fide purchaser of a security interest in the 36 BOA Checks pursuant to N.Y. U.C.C. § 4-208, which provides transferee banks with a security interest in dishonored collateral to the extent that those banks extend provisional credit based on that collateral. See Pioneer's Pet. ¶¶ 7–28 ("First Claim"). Second, Pioneer argues that it was the bona fide purchaser of both the BOA Checks and the Pioneer Shares pursuant to its Loan Agreement with Defendant. See id. ¶¶ 29–54 ("Second Claim")

In its Petition, Cachet argues that it possessed a constructive trust consisting of the Bank of America accounts ending in 6843 and 6103. See Cachet's Am. Pet. ¶¶ 20–23. Specifically,

Cachet argues Defendant was "unjustly enriched" pursuant to their "decade-long and contractual relationship," id. ¶ 22, and that this bestowed upon Cachet a legal right to the accounts superior to that of a general creditor, see id. ¶ 23.

In his Report-Recommendation, Judge Stewart recommends (1) denying the Government's Motion to Dismiss Cachet's Amended Petition, see R. & R. at 9–19, (2) denying the Government's Motion to Dismiss Pioneer's Petition with respect to Pioneer's First Claim, see id. at 19–28, and (3) granting the Government's Motion to Dismiss Pioneer's Petition with respect to Pioneer's Second Claim, see id. at 28–32. As is relevant here, Judge Stewart finds that Pioneer's First Claim survives because N.Y. U.C.C. § 4-208 grants Pioneer a colorable security interest in the BOA Checks, see id. at 25–28, but that Pioneer's Second Claim fails because "the failure to perfect the security interest [afforded by the Loan Agreement] deprives Pioneer of standing on this claim," id. at 29. The Report-Recommendation cites to several cases from the Eleventh and Sixth Circuits which articulate the principle that "bare assertion of ownership in property" without "dominion, control, or some other indicia of ownership" can fail to meet standing requirements. Id. at 30. Judge Stewart stated that "[a]t the time the funds were seized, Pioneer had no present right to possession of the accounts at Bank of America or any funds in that Account." Id. at 31.

On October 28, 2022, Pioneer Bank filed its objections to Judge Stewart's dismissal of its Second Claim. See Pioneer's Obj. at 24. On November 21, 2022, the Government filed its response to Pioneer's Objection. See Gov't Resp. at 22.

### III.    LEGAL STANDARD

#### A.  Objections to the Report-Recommendation

"The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). However, where no party objects to a portion of a Report and Recommendation "a district court need only find that 'there is no clear error on the face of the record' in order to accept the Report and Recommendation." Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (citing Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)). If the relevant standard of review is met, then the district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

#### B.  Property Forfeiture

Property forfeiture may be ordered by a district court when "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to" crimes of fraud such as those Defendant has been convicted of in this matter. 18 U.S.C § 981(a)(1)(C); 18 U.S.C. § 1956(c)(7). Federal Rule of Criminal Procedure 32.2 and 18 U.S.C. § 835(n) govern the procedure of a third-party who asserts a claim over the property subject to forfeiture. See United States v. Daugerdas, 892 F.3d 545, 552 (2d Cir. 2018). "Section 853(n) directs third parties to file a sworn petition asserting the nature and extent of their interest. Rule 32.2(c) provides for the validity of that petition to be adjudicated in a manner similar to a civil case." Id.

The Government may move for this Court to "dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason." Fed. R. Crim. P. 32.2(c)(1)(A). The Government's "motion to dismiss a third-party petition in a forfeiture proceeding prior to discovery or a hearing should be treated like a motion to dismiss a civil complaint under Federal

Rule of Civil Procedure 12(b)." <u>Willis Mgmt. (Vt.), Ltd. v. United States</u>, 652 F.3d 236, 241 (2d Cir. 2011) (quoting <u>Pacheco v. Serendensky</u>, 393 F.3d 348, 352 (2d Cir. 2004)); <u>see also</u> Fed. R. Crim. P. 32.2(c)(1)(A) ("For purposes of the motion, the facts set forth in the petition are assumed to be true."). Thus, this Court accepts the petitions facts as true for the purpose of deciding the Motion. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (recognizing the "tenet that a court must accept as true all of the [factual] allegations contained in a complaint"). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>Willis Mgmt.</u>, 652 F.3d at 242 ("[W]e are not required to accept any legal conclusions included in the petition.").

### C.  21 U.S.C. § 853(n)

Pursuant to 21 U.S.C. § 853(n)(2) "[a]ny person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may . . . petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 21 U.S.C. § 853(n)(2). In order to be entitled to relief, the "intervenor must either (a) have an interest in the property that is superior to the criminal defendant's because it arose prior to 'the time of the commission of the acts [that] gave rise to the forfeiture', or (b) be a 'bona fide purchaser for value' of the property who was 'reasonably without cause to believe that the property was subject to forfeiture' at the time of purchase." <u>Pacheco</u>, 393 F.3d at 353 (citing 21 U.S.C. § 853(n)(6)(A) & (B)).

The "relation-back doctrine" holds that the United States' "right, title, and interest in property [subject to criminal forfeiture] vests . . . upon the commission of the act giving rise to forfeiture" <u>United States v. Watts</u>, 786 F.3d 152, 160 (2d Cir. 2015); <u>see</u> 21 U.S.C. § 853(c).

This doctrine "gives the government an independent legal claim to any assets traceable to the defendant's crime, vesting such property in the government from the moment of the crime's commission." <u>Watts</u>, 786 F.3d 152 at 164 (citing 21 U.S.C. § 853(c)). Under this doctrine, "a third party may prevail under § 853(n)(6)(A) only by establishing that he 'had a legal interest in the forfeited property before the underlying crime was committed'—that is, 'before the government's interest vested.'" <u>Watts</u>, 786 F.3d 152 at 166 (emphasis omitted) (citing <u>United States v. Timley</u>, 507 F.3d 1125, 1129 (8th Cir. 2007)).

However, "§ 853(n)(6)(B) provides a narrow exception [to the relation-back doctrine], allowing a limited category of petitioners who 'acquired an interest in the forfeited property after the government's interest vested' to prevail at an ancillary hearing." <u>Watts</u>, 786 F.3d at 169 (emphasis omitted) (citing <u>Timley</u>, 507 F.3d at 1130). "[A] transferee may still retain the property by showing that it was a bona fide purchaser for value." <u>Willis Mgmt.</u>, 652 F.3d at 245; <u>see also</u> <u>Daugerdas</u>, 892 F.3d at 548 (2d Cir. 2018) ("[T]he government's interest in the proceeds of a fraud vests as soon as those proceeds come into existence, and is therefore superior to that of any subsequent third-party recipient of those funds (unless the third party is a bona fide purchaser for value)."). Section 835(n)(6)(B) provides the elements necessary to find that a petitioner could be a bona fide purchaser, stating that "the petitioner is a bona fide purchase for value of the right, title or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under [section 853]." 21 U.S.C. § 853(n)(6)(B). The statute defines "property" to mean "(1) real property, including things growing on, affixed to, and found in land; and (2) tangible and intangible personal property, including rights, privileges, interests, claims, and securities." 21 U.S.C. § 853(b). This Circuit has read "[21 U.S.C.] § 853(n)(6)'s reference to 'a right, title, or interest in the property'

as being the same as § 853(n)(2)'s requirement of 'a legal interest in property.'" United States v. Ribadeneira, 105 F.3d 833, 835 (2d Cir. 1997).

Pioneer Bank's second claim is dependent upon it being a bona fide purchaser under section 853(n)(6)(B). Petition at B. This Court does not read any part of Pioneer Bank's second claim to be an argument for a section 853(n)(6)(A) property interest. As such, this Court only evaluates whether Pioneer Bank has standing to seek relief under section 853(n)(6)(B).

In a forfeiture proceeding initiated under section 835(n), "the standing inquiry is 'identical to one on the merits to determine whether a third party meets the statute's requirements.'" United States v. Church & Dwight Co., Inc., 510 F. App'x 55, 58 (2d Cir. 2013) (quoting DSI Assocs. LLC v. United States, 496 F.3d 175, 183 n.9 (2d Cir. 2007)).  This Court must therefore address the merits of Pioneer Bank's claim that it is "a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture." 21 U.S.C. § 835(n)(6)(B).

## IV.    DISCUSSION

Pioneer asserts that it is a bona fide purchaser of a security interest in the BOA Funds pursuant to N.Y. U.C.C. § 4-208, and that it is a bona fide purchaser of a security interest in both the BOA Funds and the Pioneer Shares pursuant to their loan agreement.

Because no party has objected to Judge Stewart's denial of the Government's motions to dismiss Cachet's Amended Petition, the Court reviews that portion of the Report-Recommendation for clear error. Similarly, because no party has objected to Judge Stewart's decision to allow Pioneer's First Claim to proceed, the Court reviews that decision for clear

error. However, because Pioneer has objected to the dismissal of its Second Claim, this Court reviews that portion of the Report-Recommendation de novo.

For the reasons that follow, the Court finds the Judge Stewart was correct to (1) preserve Cachet's Amended Petition, (2) preserve Pioneer's First Claim, and (3) dismiss Pioneer's Second Claim.

### A.  Judge Stewart's Decision to Deny the Government's Motion to Dismiss Cachet's Amended Petition is Affirmed

Where no party objects to a portion of a Report and Recommendation, "a district court need only find that 'there is no clear error on the face of the record' in order to accept the Report and Recommendation." Phillips, 955 F. Supp. 2d at 211. The Court has reviewed Judge Stewart's treatment of Cachet's Amended Petition and has found no clear error. Accordingly, Cachet's Amended Petition shall be allowed to proceed to a hearing pursuant to 21 U.S.C. § 835(n).

### B.  Pioneer Bank has sufficiently alleged that it is a Bona Fide Purchaser of a Security Interest in the 36 BOA Checks

It is undisputed that "[s]tate law determines a petitioner's legal interest in the property at issue" for the purposes of Section 853(n)(6)(B). Willis Mgmt., 652 F.3d at 242 (citation omitted). In other words, the question of whether Pioneer Bank has acquired a security interest in the BOA Checks is determined by New York state law.

However, there is a circuit court split regarding whether the phrase "bona fide purchaser" is determined with reference to state or federal law. The United States District Court for the Eastern District of New York has noted that 21 U.S.C. § 853 lacks a definition for "bona fide purchaser," which has led circuit courts "to arrive at various definitions for the term." United States v. Mendez, No. 07-CR-107, 2008 WL 3874318, at *3 (E.D.N.Y. Aug. 19, 2008) (citing United States v. Lavin, 942 F.2d 177, 184 (3d Cir. 1991)). And, while the Second Circuit has not

provided its own definition, "it has opined that the question of whether a petitioner [constitutes a bona fide purchaser for the purposes of 21 U.S.C. § 853(n)(6)(B)] is appropriately determined by reference to state law." Id. at *5 (citing Pacheco, 393 F.3d at 353 (applying New York state law to the question of whether a claimant is a bona fide purchaser for the purpose of Section 853(n)(6)(B))).

Therefore, in order to establish that it has a third-party interest in the forfeited assets, Pioneer Bank must establish under New York law (1) that an enforceable security interest has attached to the forfeited assets, and (2) that Pioneer Bank is a "bona fide purchaser" of that interest.

   *1.  Pioneer Bank Has Sufficiently Alleged the Existence of an Enforceable Security Interest Under New York Law*

Security interests are creatures of statute, and N.Y. U.C.C. § 9-203(b) "outlines the criteria for when a security interest is enforceable." Bank of N.Y. Mellon Tr. Co., N.A. as Tr. for Mortg. Assets Mgt. Series I Tr. v. Hendrickson, 191 N.Y.S.3d 571, 574 (N.Y. Sup. Ct. 2023). Specifically, Section 9-203(b) provides that a "security interest is enforceable" and thus "attaches to collateral" if "(1) value has been given," "(2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party," and "(3) the debtor has an authenticated security agreement." N.Y. U.C.C. §§ 9-203(a), (b).

However, Section 9-203(b) is expressly modified by Article 4 of the UCC, which governs "the security interest of a collecting bank." N.Y. U.C.C. Law § 9-203(c).[1] Specifically, Section

---

[1] Section 9-203(c) provides that Section 9-203(b) is modified by Section 4-210. However, this appears to be a transpositional error. Under New York's Uniform Commercial Code, the security interest of a bank in its deposits is actually governed by Section 4-208. Section 4-210 is the corresponding section of the official Uniform Commercial Code published by the Uniform Law Commission. See Unif. Commercial Code § 4-210. Security Interest of Collecting Bank in Items, Accompanying Documents and Proceeds. The Court presumes that the drafters of Section 9-203(c) of the New York Uniform Commercial Code intended to refer to Section 4-208.

4-208 provides that a "bank has a security interest in [a deposited] item," "any accompanying documents," and the "proceeds of either," but only to the extent that the bank has extended credit to the depositor in anticipation of receiving that item. N.Y. U.C.C. § 4-208(1), (1)(a). This security interest is extinguished once the bank has finally received the deposited item. See N.Y. U.C.C. § 4-208(3) ("Receipt by a collecting bank of a final settlement for an item is a realization on its security interest in the item, accompanying documents and proceeds."). In other words, Section 4-208 was drafted to protect banks if they extend credit to customers in anticipation of receiving a deposit, but the deposit never arrives—for example, in cases where a deposited check is subsequently dishonored by a payor bank.

But Section 4-208 does not totally supplant Section 9-203. Instead, "so long as the bank does not receive final settlement for the [deposited] item," the security interest continues "*subject to the provisions of Article 9*." Id. (emphasis added).

However, Section 4-208 does carve out three important exceptions to Article 9. First and most importantly, when a bank extends credit on a dishonored deposit, "no security agreement is necessary to make [its] security interest enforceable." Id. This waives the third requirement for an enforceable security interest, as set out in Section 9-203(b)(3). Second, "no filing is required to perfect the [bank's] security interest" in the deposited item. Id. And third, "the [bank's] security interest has priority over conflicting perfected security interests in the item, accompanying documents or proceeds." Id.

But while Section 4-208(3)(a) waives the third requirement for an enforceable security interest, it does not waive the first two requirements—namely, that a security interest is only enforceable if "value has been given" in exchange, N.Y. U.C.C. § 9-203(b)(1), and if "the debtor

13

has rights in the collateral or the power to transfer rights in the collateral to a secured party,"
N.Y. U.C.C. § 9-203(b)(2). It is undisputed that Pioneer Bank gave value for the security
interest, satisfying Section 9-203(b)(1). However, before the Court can find that a security
interest has attached to the 36 BOA Checks, the Court must assess whether Pioneer satisfies the
requirement of  N.Y. U.C.C. § 9-203(b)(2) that "the debtor [either] has rights in the collateral *or*
the power to transfer rights in the collateral to a secured party." U.C.C. § 9-203(b)(2) (emphasis
added).

      a.   <u>Pioneer Bank Has Not Alleged that Debtor Possesses Sufficient Rights in
the Collateral for a Security Interest to Attach</u>

As a general matter, a security interest cannot attach to property if the "debtor" —the
person purporting to own the property—does not actually have either (1) a sufficient interest in
the collateral, or (2) the right to transfer it to the creditor. <u>See</u> U.C.C. § 9-203(b). New York's
courts have applied this principle in case law outside the bona fide purchaser context. Indeed, it
is well-settled law in New York that, "[n]otwithstanding any agreement between the debtor and
the creditor, if the debtor has no rights in the collateral, no security interest in that collateral
comes into existence." <u>Matter of Emerg. Beacon Corp.</u>, 665 F.2d 36, 40 (2d Cir. 1981); <u>see also</u>
<u>Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.</u>, No. 03-CV-6413, 2006 WL 297451, at *3
(E.D.N.Y. Feb. 8, 2006) (finding that security interest in patent was not perfected because none
of the debtors had "had any interest in the Patent to convey"); <u>Gasser v. Infanti Intern., Inc.</u>, 353
F. Supp. 2d 342, 356 (E.D.N.Y. 2005) ("Amboy argues that it has a superior claim to the Patent
because of the security agreement and UCC–1 financing statement that was recorded with the
New York Department of State . . . . However, since, as stated above, Infanti International never
owned the Patent, it, as a debtor under the Uniform Commercial Code, could not transfer any
interest in the Patent to Amboy."); <u>Logan & Kanawha Coal Co., Inc. v. Banque Francaise Du</u>

Com. Exterieur, 868 F. Supp. 63, 66 (S.D.N.Y. 1994) ("The question presented by plaintiff's claim is whether CTC had rights in the ATIC invoice to which the Bank's security interest could attach."); Creation of security interests, 4D N.Y. Prac., Com. Litig. in New York State Courts § 101:16 (4th ed.) ("More simply put, [U.C.C. § 9-203(b)(2)] means that it is only at the point that the debtor has obtained an ownership interest in the collateral that the security interest will attach.").

Therefore, to the extent Defendant had any interest in the 36 BOA Checks, it might be possible for a security interest to attach to that interest under U.C.C. § 9-203(b)(2)—but such a security interest would necessarily be limited to the scope of Defendant's own rights in those checks. See Heidelberg E., Inc. v. Weber Lithography, Inc., No. 13490/91, 1992 WL 472294, at *2 (N.Y. Sup. Ct. Nov. 25, 1992) ("The requirement of [U.C.C. 9-203] that a debtor have rights in the collateral is a reflection of the general principle that one cannot encumber another's property. Therefore, the rights which the debtor must have in collateral [in order to create a security interest] should be substantial rights such as those which arise upon transfer of possession or control of the property to him." (citation omitted)); accord Inland Bank and Tr. v. ARG Intl. AG, No. 16-CV-9964, 2018 WL 3543905, at *3 (S.D.N.Y. May 3, 2018), report and recommendation adopted, No. 16-CV-9964, 2018 WL 3542844 (S.D.N.Y. Jul. 23, 2018); see also Official Comment 6 to N.Y. U.C.C. Law § 9-203 ("[I]n accordance with basic personal property conveyancing principles, the baseline rule is that a security interest attaches only to whatever rights a debtor may have, broad or limited as those rights may be."). In other words, if Defendant merely enjoyed a right of possession in the collateral, then a security interest based on

that "right[] in the collateral" would necessarily be limited to that possessory interest. U.C.C. § 9-203(b)(2).

However, Defendant did not enjoy any "substantial rights" in the forfeited assets, "such as those which arise upon transfer of possession or control of the property to him," Heidelberg, 1992 WL 472294, at *2, because the forfeited assets were "proceeds" of the conduct giving rise to Defendant's conviction, 21 U.S.C. § 853(a)(1). The Government's interest in the property thus vested when Defendant committed the acts that led to his possession of those proceeds, meaning that, while Defendant might have *possessed* the forfeited assets, he did not enjoy any legal interest in them that was substantial enough to serve as the basis of a security interest. See 21 U.S.C. § 853(c); see also Logan, 868 F. Supp. at 66–67 (holding that, where an intermediary was a mere "agent" holding assets for distribution on behalf of another party with an ownership interest, a "rational jury" might find that the intermediary lacked a "substantial interest" in the assets, and thus that a security interest did not attach); In re Nash, 70 B.R. 40, 42 (Bankr. E.D.N.Y. 1987) (finding that right to obtain stock that had not yet been issued was not sufficient to support security interest in that stock); Cantor v. Anderson, 639 F. Supp. 364, 368 (S.D.N.Y. 1986) (concluding, based on record at trial, that art dealer did not have sufficient rights in painting for a security interest to attach, despite his possession of that painting), aff'd, 833 F.2d 1002 (2d Cir. 1986); Lincoln First Com. Corp. v. New York State Tax Comm'n., 518 N.Y.S.2d 904, 906 (N.Y. Sup. Ct. 1987) (finding that "agent" in possession of collateral owned by state and municipal governments "did not possess the type of rights in the collateral which could be pledged to a third party without permission of the owner of the collateral"); cf. Possessory

Interest, Black's Law Dictionary (11th ed. 2019) (defining a "possessory interest" as a *right* to control property, as opposed to mere actual possession).

   b. <u>Pioneer Bank Has Sufficiently Alleged that Defendant Possessed the Power to Transfer Rights in the Collateral to a Secured Party</u>

  Because Defendant did not have sufficient rights in the forfeited assets to pledge them as collateral, he could only have established a security interest under New York law by possessing "the power to transfer rights in the collateral to a secured party." U.C.C. § 9-203(b)(2). In other words, Pioneer Bank could only possess an *enforceable* security interest in the funds contained in the BOA accounts if, at the time that the security interest allegedly attached, Defendant had the legal authority to transfer rights in the underlying collateral to Pioneer Bank. <u>See</u> Official Comment 6 to N.Y. U.C.C. Law § 9-203 ("Certain exceptions to the baseline rule enable a debtor to transfer, and a security interest to attach to, greater rights than the debtor has. . . . The phrase, 'or the power to transfer rights in the collateral to a secured party,' accommodates those exceptions.").

  The Court concludes that Pioneer Bank has sufficiently alleged that Defendant had the power to transfer rights in the BOA Checks to Pioneer Bank, despite the fact that Defendant lacked any substantial rights in those checks himself. Checks are negotiable instrument, and are therefore governed by Article 3 of the Uniform Commercial Code. <u>See</u> <u>Kamdem-Ouaffo v. Pepsico, Inc.</u>, No. 14-CV-227, 2015 WL 1011816, at *17 (S.D.N.Y. Mar. 9, 2015) ("Article 3 of the New York Uniform Commercial Code . . . governs commercial paper, i.e., negotiable instruments."); N.Y. U.C.C. Law § 3-104(1) (defining negotiable instruments and checks and for the purposes of Article 3). Article 3 provides that someone who takes a negotiable instrument "for value," "in good faith," and "without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person" is a "holder in due course" of that

negotiable instrument. N.Y. U.C.C. Law § 3-302. Article 3 also provides that a holder in due course receives their negotiable instrument "free" from "all claims to it on the part of any person" and "all defenses of any party to the instrument with whom the holder has not dealt," with some exceptions that may or may not be relevant here. N.Y. U.C.C. Law § 3-305(1)–(2).

For the purposes of the Government's motion to dismiss Pioneer's Petition, the Court assumes that all factual assertions by the non-moving party are true. In this case, Pioneer Bank has asserted that it received the BOA Checks "for value, in good faith, and without notice that they were overdue or had been dishonored or of any defense against or claim to them on the part of any person." Pioneer's Pet. ¶ 12. Accordingly, Pioneer Bank has sufficiently alleged that Defendant had the power to transfer good title in the BOA Checks to them, and that it received the BOA Checks as a "holder in due course" pursuant to N.Y. U.C.C. Law § 3-302. This allegation satisfies the second requirement of N.Y. U.C.C. § 9-203(b)—that a security interest only becomes enforceable if the counterparty who offered that security interest had "the power to transfer rights in the collateral to a secured party." Furthermore, and as discussed, N.Y. U.C.C. § 4-208(3)(a) waives the requirement of Section 9-203(b)(3)(A) that a security interest can only become enforceable if there is a valid security agreement between the parties. It is undisputed that Pioneer Bank gave value for the security interest, satisfying Section 9-203(b)(1). Therefore, the Court finds that Pioneer Bank has sufficiently alleged the existence of an enforceable security interest in the 36 BOA Checks.

If, however, the Court subsequently finds that Pioneer is not a "holder in due course" of the BOA Checks, then it may conclude that Defendant did not have the power to convey ownership of the BOA Checks to Pioneer Bank—meaning that N.Y. U.C.C. § 9-203(b)(2) has not been satisfied, and an enforceable security interest has not attached to the BOA Checks.

2.  *Pioneer Bank Has Sufficiently Alleged that it was the Bona Fide Purchaser of this Security Interest Under State Law*

Article 9 of the U.C.C. does not contain any bona fide purchaser provision. It was on this basis that the lower court in United States v. Huntington found that a claimant could not be a bona fide purchaser of a security interest. See United States v. Watson, No. 06-CR-290, 2010 WL 2573478, at *3 (W.D. Mich. June 22, 2010) ("Huntington's rights in secured transactions are governed by Article 9, which does not provide protection either for 'good faith purchasers for value' or for purchasers 'for value and without notice.'"). Upon appeal, the Sixth Circuit reversed the district court's decision, reasoning that, while "Article 9 of the UCC does not use express BFP terminology," the "system of perfection and priority found in Article 9 exemplifies the common law BFP concept." United States v. Huntington Nat. Bank, 682 F.3d 429, 436 n.1 (6th Cir. 2012) ("The district court was mistaken . . . when it found that Article 9 of the UCC, which governs Huntington's rights as a secured creditor, does not provide protection for good faith or *bona fide* purchasers for value.").

Both the parties and Judge Stewart have engaged extensively with the Sixth Circuit's Huntington decision. See, e.g., R. & R. at 30–31; Pioneer's Obj. at 14–15; Gov't Resp. at 16–17. In particular, the parties have heavily debated whether Huntington supports the proposition that a secured creditor can be a bona fide purchaser of their security interest. See R. & R. at 30–31. However, Huntington is inapposite. The Sixth Circuit has held that the term "bona fide purchaser" should be defined according to *federal law* for the purposes of Section 853(n)(6)(B). See Huntington, 682 F.3d at 433 ("Federal law controls whether a party qualifies as a BFP under 21 U.S.C. § 853(n)(6)(B)."); see also Mendez, 2008 WL 3874318, at *4 (defining bona fide purchaser "in the context of § 853(n)(6)(B)"). By contrast, and as discussed, see supra Part IV.B, the Second Circuit has suggested that bona fide purchaser status should be determined with

reference to *state law*. <u>See</u> <u>Pacheco</u>, 393 F.3d at 353; <u>see also</u> <u>Mendez</u>, 2008 WL 3874318, at *5

("[The Second Circuit] has not itself defined 'bona fide purchaser for value.' Rather, it has

opined that the question of whether a petitioner fits within the definition is appropriately

determined by reference to state law."); <u>cf.</u> <u>In re Mosello</u>, 193 B.R. 147, 151 (S.D.N.Y. 1996),

<u>aff'd,</u> 104 F.3d 352 (2d Cir. 1996) ("The definition and powers of a 'bona fide purchaser' are

governed by the substantive state law pertaining to the subject property."). The Court therefore

looks to state law to determine whether Pioneer qualifies for bona fide purchaser status for the

purpose of 21 U.S.C. § 853(n)(6)(B).

Although Article 9 of the N.Y. U.C.C. does not contain any bona fide purchaser

provision, the Court nonetheless finds that it is possible for a claimant to be the bona fide

recipient of a security interest. The N.Y. U.C.C. defines a "security interest" as "an interest in

personal property or fixtures which secures payment or performance of an obligation." N.Y.

U.C.C. Law § 1-201(35). In other words, a security interest consists of a contingent property

interest in the underlying collateral. <u>See</u> <u>Ford Motor Credit Co. v. NYC Police Dept.</u>, 503 F.3d

186, 191 (2d Cir. 2007) ("[A] security interest is indisputably a property interest . . . A secured

creditor has . . . [a] property right to the collateral that secures the debt in the event of non-

payment." (emphasis omitted)).

Because Section § 853 only concerns the forfeiture of *property*, <u>see</u> 21 U.S.C. § 853(a),

and because a security interest is only a property interest to the extent that it represents an

interest in the underlying collateral, the Court concludes that a creditor may only be a bona fide

purchaser of a security interest to the extent that it is a bona fide purchaser of the underlying

collateral. Therefore, if Pioneer can show that it is a bona fide purchaser of the 36 BOA Checks,

as defined by the relevant provisions of the N.Y. U.C.C., then it will have shown that it is a bona fide purchaser of the security interest in that collateral.

Here, Pioneer asserts that an enforceable security interest has attached to the 36 BOA Checks. And, as discussed, Pioneer has sufficiently alleged that it is a "holder in due course" of those checks. See supra Part IV.B.1. Pioneer must therefore be afforded an opportunity to show that these two things are true according to a preponderance of the evidence, and that it thus qualifies for the protections afforded by 21 U.S.C. § 853(n)(6)(B). If Pioneer cannot do so, then it will not be entitled to bona fide purchaser status for the purposes of Section 853(n)(6)(B).

## C. Whether Pioneer Bank is a Bona Fide Purchaser of a Security Interest in the Pioneer Shares

### 1. A Bona Fide Purchaser of an Unperfected Security Interest Can Assert a Claim Pursuant to Section 853(n)(B)

As discussed, Section 853(n) provides that a third-party claimant shall have a superior claim to the Government if it the claimant is "is a bona fide purchaser for value of the right, title, or interest in the property." While Pioneer's alleged interest in the 36 BOA Checks is perfected, the parties agree that Pioneer's security interests pursuant to the Loan Agreement are not perfected. See, e.g., Pioneer's Obj. at 2, 20–22; Gov't Resp. at 13. The question, therefore, is whether the bona fide purchaser of an *unperfected* security interest can assert a colorable claim pursuant to Section 853(n)(B).

The Court finds that bona fide purchaser can, as a matter of law. Pioneer Bank is correct that an unperfected security interest may still be enforceable against the debtor. See Pioneer's Obj. at 21; see also N.Y. U.C.C. § 9-203 (a), (b) (providing that a security interest has attached once it becomes enforceable, and setting out the requirements for enforceability). The purpose of perfection is "to put third parties on notice that the secured party . . . may have a perfected security interest in the collateral described." In re Bucala, 464 B.R. 626, 632 (Bankr. S.D.N.Y.

21

2012) (internal quotation marks omitted); see also In re Vienna Park Properties, 136 B.R. 43, 51 (S.D.N.Y. 1992), aff'd, 976 F.2d 106 (2d Cir. 1992) ("'[P]erfection' refers to the process by which a secured party puts third-parties on notice of its interest, whereas 'enforcement' refers to the steps the secured party must take to realize its rights in the collateral . . ."). In so doing, the secured party gains priority to the collateral with respect to all non-secured third-parties. See James McCafferty, The Assignment of Rents in the Crucible of Bankruptcy, 94 Com. L. J. 433, 471–72 (1989) ("'[P]erfection' means the process by which the security interest . . . achieves a status where it cannot be avoided by an intervening third party. . . . 'Perfection' is thus a concept involving the relative interests of the lien-holder and an intervening third party. It does not deal with the relationship between the debtor and the collateral property. Those latter relationships raise only the question of 'enforcement' of the security interest.").

Under the relation-back doctrine, as the Government points out, it "succeeds to the interest Mann had in the" forfeited assets. Gov't Resp. at 13; see also United States v. Ida, 14 F. Supp. 2d 454, 459 (S.D.N.Y. 1998) ("The effect of a verdict of forfeiture therefore is simply to put the government into the shoes of the criminal defendant. It succeeds to whatever interest, if any, that the defendant had in the property."); c.f. United States v. Lavin, 942 F.2d 177, 185 (3d Cir. 1991) ("Thus, if a third party's interest in the forfeited property, at the time of the criminal acts, was superior to the criminal defendant's interest, then the interest that the government acquires when it steps into the defendant's shoes is subordinate to that of the third party."). Therefore, the question is not whether Pioneer enjoys priority over a hypothetical third-party claimant, but rather whether Pioneer has priority over *the Defendant himself*. Based on the facts alleged, it is at least possible that Pioneer has an enforceable security interest in the Pioneer Shares. See Pioneer's Obj. at 12–13. Pioneer is thus entitled to attempt to establish (1) its status

as a bona fide purchaser and (2) the existence of such an interest at a hearing pursuant to a hearing pursuant to 21 U.S.C. § 853(n).

The Government heavily relies on United States v. Chowaiki, 369 F. Supp. 3d 565 (S.D.N.Y. 2019). See Gov't Resp. at 15–16. In Chowaiki, the court noted that, under the relation-back doctrine, the Government is "something like" a "secured creditor with a lien on the defendant's tainted assets superior to that of most any other party." Chowaiki, 369 F. Supp. 3d at 575 (quoting Luis v. United States, 578 U.S. 5, 16 (2016)). However, the principal case relied upon by the court in Chowaiki, Luis v. United States, does not support the proposition that the Government acts as a secured creditor *with respect to third-party claimants*. Instead, the Supreme Court in Luis describes the Government's status as "something like a secured creditor" in the context of discussing the Government's rights *with respect to defendants*. See Luis, 578 U.S. at 16 ("If we analogize to bankruptcy law, the Government, by application of § 853(c)'s relation-back provision, became something like a secured creditor with a lien on the defendant's tainted assets superior to that of most any other party. For this reason, § 853(c) has operated in our cases as a significant limitation on criminal defendants' property rights in such assets—even before conviction." (citation omitted)) (collecting cases).

### 2. *Pioneer Bank Has Not Shown that it Could Be a Bona Fide Purchaser of a Security Interest in the Pioneer Shares*

Just as the Court assessed whether Pioneer Bank could be the bona fide purchaser of a security interest in the BOA Checks, see supra Part IV.B.2, so too must it determine whether Pioneer Bank has carried its burden in showing that it is a bona fide purchaser of a security interest in the Pioneer Shares. The Court concludes that it has not.

While Article 3 of the U.C.C. governs negotiable instruments, Article 8 regulates the sale of securities. And, just as the "holder in due course" of a negotiable instrument is protected by

N.Y. U.C.C. Law § 3-302, the purchaser of a security is a "protected purchaser" if it satisfies the requirements of N.Y. U.C.C. Law § 8-303.

Section 8-303 provides that a purchaser of securities "acquires its interest in the security free of any adverse claim," N.Y. U.C.C. Law § 8-303(b), if it (1) "gives value," (2) "does not have notice of any adverse claim," and (3) "*obtains control of the . . . security*," N.Y. U.C.C. Law § 8-303(a)(1)–(3) (emphasis added). And, as Judge Stewart correctly concluded, Pioneer Bank has not sufficiently alleged at any point that it was in control of the Pioneer shares. See R. & R. at 31–32. Therefore, and because the N.Y. U.C.C. Law § 8-303 is the closest analogue to a bona fide purchaser provision governing securities, the Court concludes that Pioneer Bank has not carried its burden in showing that it is the bona fide purchaser of a security interest in the Pioneer Shares.

In summary, the Court finds that Pioneer Bank has sufficiently alleged that it is the bona fide purchaser of a security interest in the 36 BOA Checks. However, for the purposes of the Motion to Dismiss Pioneer's Petition, the Court finds that Pioneer is *not* a bona fide purchaser of the Pioneer Shares. In other words, the Court affirms Judge Stewart's conclusions, but based on different reasoning.

This matter is therefore remanded to Judge Stewart for a hearing pursuant to 21 U.S.C. § 853(n), and for any other proceedings pursuant to this opinion.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Government's Motion to Dismiss the Amended Third-Party Petition of Cachet Financial Services, Dkt. No. 121, is **DENIED**; and it is further

**ORDERED**, that the Government's Motion to Dismiss the Third-Party Petition of

Pioneer Bank, Dkt. No. 65, is **GRANTED IN PART AND DENIED IN PART**; and it is further

**ORDERED**, that these matters proceed to a hearing pursuant to 21 U.S.C.

§853(n)(5); and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on all parties.

**IT IS SO ORDERED.**

DATED:          April 5, 2024
                Albany, New York

LAWRENCE E. KAHN
United States District Judge