**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

    *v.*

MICHAEL MANN,

               Defendant.

1:20-CR-199 (LEK/DJS)

PIONEER BANK and CACHET
FINANCIAL SERVICES,

               Third-Party Claimants.

**MEMORANDUM OF LAW IN SUPPORT OF THIRD-PARTY CLAIMANT
PIONEER BANK'S MOTION TO AMEND ITS PETITION
<u>PURSUANT TO FED. R. CIV. P. 15</u>**

DLA PIPER LLP (US)

Robert J. Alessi (NDNY Bar Roll No. 101019)
1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 335-4866
Fax: (518) 935-9767
robert.alessi@us.dlapiper.com

Courtney Saleski (NDNY Bar Roll No. 703877)
Aaron J. Shaddy (NDNY Bar Roll No. 705266)
1650 Market Street - Suite 5000
Philadelphia, PA 19103
Tel.: (215) 656-3300
courtney.saleski@us.dlapiper.com
aaron.shaddy@us.dlapiper.com

*Counsel for Pioneer Bank*

Dated: November 1, 2024

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ....................................................................................................1

II.     BACKGROUND ......................................................................................................2

        A.      Pioneer's Original Petition. ...................................................................2

        B.      The Government's Motion to Dismiss. ...................................................4

        C.      Case Developments after Judge Kahn's Memorandum-Decision and Order
                and Pioneer's Amended Petition. ............................................................6

III.    LEGAL STANDARD ..............................................................................................9

IV.     ARGUMENT ...........................................................................................................9

        A.      Permitting Pioneer to Exercise Its Right to File the Amended Petition
                Will Not Unduly Prejudice the Government. ...........................................9

        B.      Amendment Is Not Futile Because the Amended Petition Cures the
                Original Petition and Pleads an Alternative Basis for Recovery. ..........16

V.      CONCLUSION ......................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agerbrink v. Model Serv. LLC*,
    155 F. Supp. 3d 448 (S.D.N.Y. 2016) ............................................................9, 10, 13

*Ballast v. Workforce7 Inc.*,
    No. 20-cv-3812 (ER), 2023 WL 3301839 (S.D.N.Y. May 8, 2023) ...........................9, 12, 15

*Coniglio v. Cucuzza*,
    345 F.R.D. 372 (E.D.N.Y. 2024) .................................................................16

*Crigger v. Fahnestock & Co.*,
    443 F.3d 230 (2d Cir. 2006)......................................................................20

*Daub v. Future Tech Enter., Inc.*,
    65 A.D.3d 1004 (N.Y. 2d Dep't 2009) ..........................................................19

*In re First Cent. Fin. Corp.*,
    377 F.3d 209 (2d Cir. 2004)...................................................................16, 20

*Foman v. Davis*,
    371 U.S. 178 (1962)............................................................................9, 21

*GLM DFW, Inc. v. Windstream Holdings Inc. (In re Windstream Holdings Inc.)*,
    614 B.R. 441 (S.D.N.Y. 2020)..................................................................15

*Indep. Disc. Corp. v. Bressner*,
    47 A.D.2d 756 (N.Y. 2d Dep't 1975) ...........................................................19

*Kamal v. G E R Indus., Inc.*,
    No. 20-cv-5671 (VB), 2021 WL 1864132 (S.D.N.Y. May 10, 2021).....................................9

*Meyer v. Seidel*,
    89 F.4th 117 (2d Cir. 2023) ....................................................................18

*Middle Atl. Utils. Co. v. S. M. W. Dev. Corp.*,
    392 F.2d 380 (2d Cir. 1968)....................................................................12

*Monahan v. New York City Dep't of Corrections*,
    214 F.3d 275 (2d Cir. 2000).................................................................10, 11

*Neurological Surgery, P.C. v. Grp. Health Inc.*,
    224 A.D.3d 697 (N.Y. 2d Dep't 2024) ..........................................................19

*Palin v. New York Times Co.*,
   940 F.3d 804 (2d Cir. 2019) ................................................................20

*Pasternack v. Shrader*,
   863 F.3d 162 (2d Cir. 2017) ............................................................9, 11

*Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*,
   889 F. Supp. 2d 453 (S.D.N.Y. 2012) .................................................12

*United States v. Lazarenko*,
   254 F.R.D. 384 (N.D. Cal. 2008) ...................................................14, 15

*United States v. Porcelli*,
   No. 85-cr-00756 (CPS), 1992 WL 355584 (E.D.N.Y. Nov. 5, 1992) ....................14

*United States v. Procter & Gamble Co.*,
   356 U.S. 677 (1958) ............................................................................15

*United States v. Sineneng-Smith*,
   590 U.S. 371 (2020) ............................................................................17

*Williams v. Citigroup Inc.*,
   659 F.3d 208 (2d Cir. 2011) ..................................................................9

**Statutes**

21 U.S.C. § 853(n)(6) ...................................................................... *passim*

N.Y. U.C.C. § 4-208 .............................................................3, 8, 13, 18

N.Y. U.C.C. § 8-303 ...................................................................5, 17

**Other Authorities**

Fed. R. Civ. P. 15 ............................................................................ *passim*

Fed. R. Civ. P. 16 ...................................................................................12

Fed. R. Civ. P. 60 ...................................................................................18

Fed. R. Crim. P. 32.2 ..............................................................................14

Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2854 (3d ed.) ...................18

Third-party claimant Pioneer Bank ("Pioneer") respectfully submits this memorandum of law in support of its motion to serve an amended petition (the "Amended Petition,"[1] attached as Exhibit 1 of the accompanying Declaration of Aaron J. Shaddy) pursuant to Federal Rule of Civil Procedure 15, as made applicable to these ancillary proceedings by Federal Rule of Criminal Procedure 32.2.

## I.    INTRODUCTION

Pioneer should be granted to leave to file its Amended Petition. Doing so will ensure that Pioneer receives a full and fair opportunity to be heard on the merits and will not prejudice the Government, particularly as discovery in this case is still ongoing, no firm discovery deadlines or trial dates have been set, and the Amended Petition will not significantly alter the scope of discovery in these proceedings or significantly delay their ultimate disposition. The Government's objection about delay is both legally and factually insufficient to establish undue prejudice, and its contention that Pioneer somehow errs by pleading facts known to it years ago is irrelevant as a matter of law.

Though the Government will likely repeat its objection that amendment would be futile here, this misconstrues and misconceives Judge Kahn's April 5, 2024 Memorandum-Decision and Order. In reversing Magistrate Judge Stewart's Report and Recommendation (the "R&R"), Judge Kahn found that because Pioneer had entered into Loan and Security Agreements with certain Mann Entities, Pioneer had sufficiently pleaded that it was a bona fide purchaser of an unperfected security interest against the forfeited Bank of America Accounts at issue in these proceedings, pursuant to 21 U.S.C. § 853(n)(6)(B). The sole claim dismissed by Judge Kahn—Pioneer's claim as to the Pioneer Shares—does not furnish any barrier to Pioneer's claim as a bona fide purchaser

---

[1] Capitalized terms used herein bear the same meaning as in the Amended Petition unless otherwise noted.

of unperfected security interests as to the Bank of America Accounts. The Government is simply wrong that this latter claim was dismissed, let alone that its dismissal would be incapable of being cured.

Amendment is also not futile because the Amended Petition now pleads additional facts setting forth the basis of Pioneer's unperfected security interest in the Bank of America Accounts, including that Mann, pursuant to his contracts with Cachet Financial Services ("Cachet"), had rights in any funds traceable to the disbursement of funds under his contracts with Cachet. As a result, any such funds found in the Bank of America Accounts are subject to Pioneer's unperfected security interest in those Accounts. Moreover, the Amended Petition now includes an additional claim under Section 853(n)(6)(A), premised on Pioneer's long-standing security interests that pre-date the crimes leading to forfeiture. For these reasons and more, the Court should grant Pioneer's motion to amend its petition under Federal Rule of Civil Procedure 15(a).

## II.    BACKGROUND

### A.    Pioneer's Original Petition.

As the Court is aware, Pioneer is one of Mann's chief victims, with his frauds having caused Pioneer to incur millions of dollars in losses stemming from his lies about the revenues and receivables of his businesses and the nature and sources of the funds deposited into his general deposit accounts at Pioneer. *See* Amended Petition ¶¶ 3-7.

To recover these losses, Pioneer filed its original petition in 2021 (Dkt. No. 54), asserting property or security interests in the property forfeited to the Government under the Court's Preliminary Forfeiture Order, which decreed that Mann forfeit to the United States all his right, title, and interest to certain specific property. That property includes: (a) the Bank of America account ending in 9506 held by ValueWise Corporation ("ValueWise") with a balance of $1,444,975.16 ("ValueWise BOA Account 9506"); (b) the Bank of America account ending in

6843 held by ValueWise with a balance of $5,363,936.77 ("ValueWise BOA Account 6843");
(c) the Bank of America account held by Heutmaker Business Advisors LLC ("Heutmaker") with
a balance of $7,713,562.99 ("Heutmaker BOA Account 6103," and collectively with the
ValueWise BOA Accounts 9506 and 6843, the "Bank of America Accounts"); and (d) 30,000
common shares of Pioneer Bancorp Inc., owned by MyPayrollHR.com LLC ("MyPayroll" and the
"Pioneer Shares," with the latter, together with the Bank of America Accounts, collectively termed
the "Subject Property"). *See* Amended Petition ¶ 5.

      Pioneer filed its original petition asserting two bases for claiming that it was a bona fide
purchaser of a property or security interests in the Subject Property under Section 853(n)(6)(B) of
the federal forfeiture statute. The first basis in the original petition for Pioneer's security interest
in the Bank of America Accounts flowed from provisional credits that Pioneer provided to Mann
for checks that were ultimately dishonored by Bank of America upon its discovery of Mann's
check-kiting scheme, causing Pioneer to incur losses. Under N.Y. U.C.C. § 4-208, Pioneer has a
security interest in the proceeds of these provisional credits to the extent that they are traceable to
the Bank of America Accounts. *See* Dkt. No. 54 ¶¶ 7-28. The second basis in the original petition
for Pioneer's security interest in the Subject Property flowed from Pioneer's August 12, 2019 Loan
and Security Agreement between Pioneer and certain Mann entities, including with ValueWise,
Heutmaker, and MyPayroll. *See* Dkt. No. 54 ¶¶ 29-54. Under the 2019 Loan and Security
Agreement Pioneer extended a $42 million revolving line of credit to these entities, which was
secured by an all-assets security agreement providing Pioneer with rights to all of their collateral,
including their "investment property," "accounts," and "deposit accounts." Dkt. No. 54 ¶ 36. The
original petition thus pleaded that Pioneer is a bona fide purchaser for value of security interests
in the Bank of America Accounts.

**B.    The Government's Motion to Dismiss.**

The Government challenged Pioneer's original petition on three grounds in its motion to dismiss. First, the Government argued that Pioneer lacked Article III standing because Pioneer had exercised set-off rights on Mann accounts in response to his fraud. *See* Dkt. No. 65-1 at 12-14. Magistrate Judge Stewart rejected the Government's standing argument in his R&R, reasoning that Pioneer should have the opportunity to present its case at a merits hearing. *See* Dkt. No. 132 at 22-25. The Government did not object to or seek review by the District Court of this decision.

Second, the Government argued that Pioneer had only conclusorily alleged that the proceeds of its provisional credits were to be found in the Bank of America Accounts because Pioneer's allegations were based upon information and belief—the only way Pioneer could plead such a theory in the absence of documentation from Bank of America. *See* Dkt. No. 65-1 at 14-17. Magistrate Judge Stewart rightly rejected this argument as "hold[ing] Pioneer to too high a standard at the pleadings stage." Dkt. No. 132 at 27. The Government did not object to or seek review by the District Court of this decision.

Finally, the Government argued that Pioneer lacked "standing" because it "lack[ed] a perfected security interest in the Subject Assets," reasoning—incorrectly—that Pioneer was not a bona fide purchaser under Section 853(n)(6)(B) because the security interest it purchased in the Subject Property was *unperfected* and could only be a bona fide purchaser if the security interest it purchased was *perfected*. *See* Dkt. No. 65-1 at 17-21. Magistrate Judge Stewart accepted the Government's argument that Pioneer's failure to plead a *perfected* security interest barred Pioneer from proceeding against the Government, stating that because Pioneer did "not allege it ever had possession or control," Pioneer could not proceed as a bona fide purchaser of security interests in the Subject Property. *See* Dkt. No. 132 at 28-31. The Government made no other arguments in support of the dismissal of Pioneer's claims.

With respect to the third argument raised by the Government and accepted by Magistrate Judge Stewart in his R&R, Pioneer filed an objection with the District Court on the grounds that this improperly found that a bona fide purchaser of an unperfected security interest could not pursue the claim to the property in forfeiture proceedings. *See* Dkt. No. 135 at 9-10. Judge Kahn agreed with Pioneer: in analyzing "Pioneer's security interests pursuant to the Loan Agreement," he held that "Pioneer Bank is correct that an unperfected security interest may still be enforceable against the debtor." Dkt. No. 157 at 21. He further found that such a security interest would be enforceable against the Government because the Government "succeeds to the interest Mann had" in the Subject Property. *Id.* at 22. The Court conducted no further analysis on this question, and thus its clear holding, at least with respect to Pioneer's third-party claim to the Bank of America Accounts, was that Pioneer could be a bona fide purchaser of an unperfected security interest under the Loan and Security Agreement, which was enforceable against the Government insofar as it sat in Mann's shoes with respect to the Bank of America Accounts.

After holding that an unperfected security interest in the Subject Property was enforceable against the Government, Judge Kahn also proceeded to the separate question of whether Pioneer could be a bona fide purchaser of the Pioneer Shares under Section 853(n)(6)(B) by turning to Article 8 of the Uniform Commercial Code. *See* Dkt. No. 157 at 23-24. Although neither party cited to the "protected purchaser" provision of Article 8, the Court nonetheless held that Pioneer must plead that it was a "protected purchaser" of the Pioneer Shares under N.Y. U.C.C. § 8-303(b) to be a bona fide purchaser under Section 853(n)(6). *See* Dkt. No. 157 at 24. Having so held, the Court summarized its decision by stating that "for the purposes of the Motion to Dismiss Pioneer's Petition, the Court finds that Pioneer is *not* a bona fide purchaser of the Pioneer Shares," thus

5

"affirm[ing] Judge Stewart's conclusions, but based on different reasoning." *Id.* (emphasis in original).

**C.    Case Developments after Judge Kahn's Memorandum-Decision and Order and Pioneer's Amended Petition.**

Following Judge Kahn's decision on the R&R, Magistrate Judge Stewart held a status conference on May 7, 2024 to determine next steps in the ancillary proceedings. When asked about discovery, Cachet indicated that it thought "discovery is required in this case before either a hearing or summary judgment," and indicated that it "would be looking for some discovery." Shaddy Decl. Ex. 2 at 3:7-13. The Government similarly indicated that it would share grand jury records upon receiving leave to do so from the Court, and would also subpoena Bank of America for documents relevant to these proceedings. *Id.* 3:15-4:10. Pioneer, for its part, indicated that it also believed discovery was appropriate and that it "may well move to amend its petition once it gets the discovery material." *Id.* 6:2-8. The Government at this time did not object to Pioneer's anticipated amendment. Instead, the Government proposed that discovery be staged so that the Government could "make its initial disclosures, disclose the Bank of America records, and also the records from Pioneer and Cachet, and then … hav[e] some period of time where each party's respective financial analyst reviews these records," after which point the Government recognized that "perhaps we need to take some depositions or do more factual investigation." *Id.* 18:12-25. The Government also stated that at such time, "Pioneer could also decide whether to seek to amend its petition[.]" *Id.* 19:1-2. Magistrate Judge Stewart agreed with this informal plan, stating "I'm fine with that," *id.* 19:8, though he also observed that "[m]y experience has been when I staged discovery it doesn't actually shorten the whole process, honestly." *Id.* 11:16-19.

On June 20, 2024, a little over six weeks later, the Government served on Bank of America a subpoena to produce documents relating to certain accounts at Bank of America, including the

Bank of America Accounts at issue in these proceedings. *See* Shaddy Decl. Ex. 3. On the same date, the Government also produced 962 documents, with another production on or around July 10, 2024. Shaddy Decl. ¶ 6. On or around August 16, 2024, the Government produced the overwhelming majority of documents produced in this case so far—some 77,000 documents from multiple custodians, including from Bank of America, Cachet, and Pioneer, totaling over 180,000 pages. *Id.* ¶ 8.

Discovery is ongoing. At the Court's September 4, 2024 status conference, the Government indicated that it had "more recently followed up with Bank of America to get additional documents and information from them" and that "production from Bank of America is ongoing and incomplete." Shaddy Decl. Ex. 4 at 3:21-4:2. The Government also indicated that it expected still more discovery, "[p]articularly as it pertains to Cachet's claims and the constructive trust." *Id.* 10:18-23. At the same hearing, Pioneer again noted that it had told the parties during the May 7 status conference that it had been waiting to amend its petition because of Judge Kahn's pending decision on Pioneer's objections to the R&R, as it "wouldn't have been efficient to amend our petition waiting for a motion to be decided," as well as the production of documents by the Government. *Id.* 15:9-17:4. Now, following Judge Kahn's decision and the production of discovery by the Government, Pioneer stated that it would provide a draft of the Amended Petition to the Government and to Cachet, which "seem[ed] like a good approach" to the Court. *Id.* 16:16-17:6. Neither the Government nor Cachet objected to Pioneer's proposed amendment at this time. To date, no party has noticed a deposition in these ancillary proceedings and the Court has only tentatively scheduled deadlines for discovery and trial. *See* Dkt. No. 191.

Pioneer first provided a draft of its Amended Petition to the Government on October 14, 2024. *See* Shaddy Decl. ¶ 11. Pursuant to the Court's instructions, *see* Dkt. No. 191, Pioneer

provided the Government with a final draft of its Amended Petition on October 23, 2024. *See* Shaddy Decl. ¶ 12.

In substance, Pioneer's Amended Petition is tailored to the discovery produced in this case to date and considerably narrows the scope of issues in these ancillary proceedings. As set forth in more detail below, *see infra* § IV.B, the Amended Petition sets forth Pioneer's security interests in the Subject Property and pleads additional facts to support Pioneer's claims. First, the Amended Petition no longer pursues Pioneer's security interest under U.C.C. § 4-208 relating to the provisional credits Pioneer provided to certain Mann entities, as the recently disclosed Bank of America documents appear to foreclose this argument. By withdrawing this claim, Pioneer expects that the scope of discovery in these proceedings will be narrowed. Second, the Amended Petition now pleads additional facts setting forth the basis of its security interest in the Bank of America Accounts and the funds contained within, including the basis for Pioneer's claim to any funds disbursed to Mann pursuant to his contracts with Cachet. Third, the Amended Petition now pleads an additional claim under Section 853(n)(6)(A), which was not previously raised by Pioneer.

On October 24, 2024, the Government objected to the Amended Petition. *See* Shaddy Decl. ¶ 13 and Ex. 6. First, it objected that amendment was futile because it constituted "an attempt to revive [Pioneer's] Second Claim [in the original petition], which has already been dismissed by the Court." *Id.* Ex. 6 at 1-2. Second, it argued that Pioneer could not assert a claim under Section 853(n)(6)(A) "based upon information that was known to Pioneer when it filed its original petition in 2021," which it suggested was "particularly problematic in view of Pioneer's acknowledgement that it is no longer able to support its First Claim arising from the 39 Pioneer Checks." *Id.* at 2. Last, the Government stated it "may object to Pioneer's use of its amended petition as a vehicle to

attack Cachet's claims" and noted "we may have other objections as well." *Id.* Each one of these objections, as discussed below, is without merit.

## III.    LEGAL STANDARD

Under Rule 15, leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("[T]his mandate is to be heeded"). "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (reversing trial court for denying leave to amend). This standard reflects the Second Circuit's "strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011). Leave to amend should accordingly be granted unless amendment (1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) would prejudice the opposing party, or (4) would be futile. *See Kamal v. G E R Indus., Inc.*, No. 20-cv-5671 (VB), 2021 WL 1864132, at *1 (S.D.N.Y. May 10, 2021) (citation omitted). "The non-moving party bears the burden of demonstrating that substantial prejudice would result were the proposed amendment to be granted." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016) (internal quotations omitted).

## IV.    ARGUMENT

### A.    Permitting Pioneer to Exercise Its Right to File the Amended Petition Will Not Unduly Prejudice the Government.

"[A]bsent a showing of bad faith or undue prejudice, delay does not provide a basis for the district court to deny the right to amend." *Ballast v. Workforce7 Inc.*, No. 20-cv-3812 (ER), 2023 WL 3301839, at *5 (S.D.N.Y. May 8, 2023) (quoting *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008)) (cleaned up). In determining "prejudice" under Rule 15, courts consider whether the assertion of a new claim would "(i) require the opponent to expend significant

additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent plaintiff from bringing a timely action in another jurisdiction." *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 284 (2d Cir. 2000). "[O]nly *undue* prejudice warrants denial of leave to amend." *Agerbrink*, 155 F. Supp. 3d at 454 (emphasis in original).

Any argument from the Government that it may suffer undue prejudice from Pioneer's amendment would be without merit. Amendment will not cause the parties to expend significant additional resources to conduct discovery and will not significantly delay the resolution of this dispute. *See Monahan*, 214 F.3d at 284. The Government reports that its discovery is ongoing, and has so far produced documents from grand jury proceedings and documents produced by Bank of America in response to the Government's subpoena in June 2024, leading to the production of approximately 77,000 documents by or around August 16, 2024. *See* Shaddy Decl. ¶ 8. As for Cachet, so far it has produced only a single document, a declaration from a Bank of America employee dated December 12, 2023 that Cachet produced nearly a year later, on October 10, 2024. *Id.* ¶ 10 and Ex. 6. Pioneer promptly reviewed these productions and accordingly moved to amend its petition, as it has indicated it would do since the status conference this past May. *See* Shaddy Decl. Ex. 2 at 6:2-4. In addition, no depositions have occurred in this case and a trial has not been scheduled. There can be thus no argument that amendment will "unfairly surprise[]" the Government or cause the Government "to waste time and money deposing witnesses and preparing for a trial on the merits." *Monahan*, 214 F.3d at 284; *see also Agerbrink*, 155 F. Supp. 3d at 455 (finding no prejudice from amendment where "discovery is still underway, and neither a summary judgment briefing schedule nor a trial date has been set …").

The Government's objections also ring hollow because it previously made no objection when the only other third-party claimant in this case, Cachet, amended its complaint so that it would now extend to a claim on BOA Account 9506.[2] Cachet stated it sought to amend its petition because it purportedly had "newly acquired information" despite the fact that no discovery had been produced by any party at that time.[3] Just as there was no prejudice to the Government in allowing Cachet to amend its petition so that Cachet's claims extended to another of the Bank of America Accounts, there is no prejudice that would arise from Pioneer amending its petition to cure the Court's dismissal of its previous claim and add alternative theories of recovery.

Pioneer anticipates that the Government will repeat its objection that Pioneer should be denied the opportunity to amend its petition because it will purportedly "delay[] forfeiture for months or longer," Dkt. No. 65-1 at 2, as the Government first argued over three years ago when challenging Pioneer's original petition. That argument is as meritless now as it was then: the Government can scarcely argue that the ultimate disposition of the Subject Property is urgent or will be significantly delayed by Pioneer's amendment when it has requested (and received) ***eleven separate 90-day extensions*** to fully identify victims to the Court.[4] And even if the Government could establish some prejudice arising from delay, this would not be *unduly* prejudicial. "[T]he fact that one party has spent time and money preparing for trial will usually not be deemed prejudice sufficient to warrant a deviation from the rule broadly allowing amendment to pleadings." *Monahan*, 214 F.3d at 284; *cf. Pasternack*, 863 F.3d at 174 ("Perhaps it should; but it does not.").

---

[2] *See* Dkt. No. 167.

[3] *See* Dkt. No. 162.

[4] *See* Dkt. Nos. 128, 130, 136, 146, 148, 150, 152, 154, 159, 183, and 187.

Similarly irrelevant is the Government's objection that Pioneer seeks to amend "based upon information that was known to Pioneer when it filed its original petition," as well as its suggestion that "[t]he timing of this proposed amendment is particularly problematic in view of Pioneer's acknowledgement that it is no longer able to support its First Claim arising from the 39 Pioneer checks." Shaddy Decl. Ex. 6 at 1-2. It is unclear whether the Government views amendment as "problematic" due to bad faith or prejudice (both of which are non-existent), but whatever its reasons, leave to amend is the rule, not the exception in the Second Circuit. "[I]f a meritorious claim is offered, and if there will be little resultant prejudice to defendant, plaintiff is normally entitled to a hearing on the merits." *Middle Atl. Utils. Co. v. S. M. W. Dev. Corp.*, 392 F.2d 380, 385 (2d Cir. 1968). Contrary to the Government's objection, "[t]his is especially true where the new matter could have been included in the original pleadings." *Id.* "Merely asserting that [Pioneer] could have uncovered information concerning the new allegations sooner and could have brought these allegations before the instant motion is insufficient." *Ballast*, 2023 WL 3301839, at *5 (citing *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 313 (S.D.N.Y. 2021)). As a result, "courts in this Circuit routinely reject either basis for a finding of bad faith, even when several years have passed since the complaint was originally filed." *Id.* (cleaned up and collecting cases). And, again, the driving reason for the delay in the Amended Petition proffered by Pioneer was the timing of the April 5, 2024 decision of the Court and the need to evaluate the recently disclosed Bank of America documents.

Indeed, to the extent this objection has *any* relevance in the context of a motion to amend, it would be when a party tries to amend under Rule 15 *after* the lapse of a court-imposed deadline under Rule 16, which may only be done for good cause. *See* Fed. R. Civ. P. 16(b)(4); *see, e.g.*, *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012)

(explaining that "[a] party fails to show good cause" to amend case deadlines under Rule 16 when information should have been known before the deadline and that Rule 16 "may obviate the Rule 15 analysis …"). But this Court has not issued a Rule 16 scheduling order, so there is no need to consider whether "good cause" exists to inject new allegations into the case after the lapse of a court-imposed deadline.

The Government's objection on the grounds that Pioneer purportedly had access to certain information years ago is simply irrelevant to the prejudice inquiry under Rule 15.[5]

In any event, even if the Government had articulated a viable objection, as a practical matter Pioneer's Amended Petition does not significantly change the factual parameters of this ancillary proceeding and is thus unlikely to significantly broaden the scope of discovery. *See Agerbrink*, 155 F. Supp. 3d at 455 (finding no undue prejudice because "much of the discovery relevant to the [new claim] overlaps with that required for current claims" and because the new claim "arises from the same transaction as the claims in the original pleading" and was "related to the plaintiff's existing claims"). Although Pioneer has amended to include reference to its earlier security interests in the Subject Property, the focus of the inquiry—whether Pioneer has a legal interest in the Subject Property—remains the same. Nor does Pioneer's inclusion of additional allegations significantly change the scope of expected discovery, such as those relating to Cachet's knowledge of Mann's activities and the effect of that knowledge in determining whether Mann had an interest in the property or whether Pioneer is a bona fide claimant with an interest superior to Cachet. Here again the Government can scarcely object: it has itself stated that it believes

---

[5] Even if this were relevant, however, the Government overlooks facts pleaded in the Amended Complaint addressing discovery received after the filing of Pioneer's original petition, including (a) Pioneer's withdrawal of its claim under N.Y. U.C.C. § 4-208 in light of documents produced by the Government from its Bank of America subpoena and (b) facts establishing that Mann may have an interest in the funds. Pioneer did not receive documents from Mann in parallel litigation until approximately September 23, 2021. *See* Shaddy Decl. ¶ 5.

discovery on Cachet's constructive trust theory is essential. *See* Shaddy Decl. Ex. 4 at 10:18-23 (counsel for the Government stating that it believed discovery was appropriate, "[p]articularly as it pertains to Cachet's claims and the constructive trust.").

Finally, the Government's previous intimation that it "may object to Pioneer's use of its amended petition as a vehicle to attack Cachet's claim," Shaddy Decl. Ex. 6 at 1-2, does not (if asserted) justify denying Pioneer its right to file an Amended Petition. It is an inevitability that Pioneer and Cachet will have competing allegations and mutually incompatible theories of recovery in this case and that discovery will be required to determine whose theory is correct. As Cachet has conceded, Pioneer and Cachet are third-party claimants with overlapping asserted interests in the Subject Property. *See* Shaddy Decl. Ex. 4 at 13:12-13 (counsel for Cachet asserting that "both Cachet Financial and Pioneer Bank are claiming the same funds and the same accounts"). Because "[e]xperience has shown that ancillary hearings can involve issues of enormous complexity," the drafters of Criminal Rule 32.2 accordingly provided that courts should apply "procedures analogous to those in the Civil Rules," including for "conducting discovery." *See* Fed. R. Crim. P. 32.2, Advisory Comm. Notes (citing *United States v. Porcelli*, No. 85-cr-00756 (CPS), 1992 WL 355584, at \*2 (E.D.N.Y. Nov. 5, 1992) (holding that that courts have "inherent power to permit discovery" by petitioners in forfeiture proceedings)).[6] And at least one court appears to have permitted discovery *between* third parties to determine whose legal interest in forfeited property controlled. *See* Dkt. No. 1276, *United States v. Lazarenko*, 3:00-cr-00284 (Nov. 5, 2007) (order granting, as modified, request by petitioners (Dkt. No. 1250) to "serve

---

[6] The *Porcelli* court specifically found that a petitioner had *more* flexibility than the Government to conduct discovery, whose discovery powers are limited by "necessary safeguards in the criminal context." *Id.* But, as the court found, "[t]his rationale … is obviously not applicable in the context of discovery by third-party petitioners." *Id.* Given that *Porcelli*'s reasoning was endorsed by the drafters of Rule 32.2, Pioneer may pursue appropriate discovery against Cachet in substantially the same manner as may the Government.

discovery … upon other Claimants in this action"); *United States v. Lazarenko*, 254 F.R.D. 384, 386 (N.D. Cal. 2008) (denying interlocutory appeal from third-party claimant "seeking a determination that they are entitled to the same funds" because of "overlapping factual issues" that "will inevitably affect the other" petitions).

Given the overlapping interests of Pioneer and Cachet, Pioneer may properly challenge the factual averments underlying Cachet's claim, as has been also widely recognized in the closely analogous context of the disposition of the debtor's estate among competing creditors in bankruptcy proceedings. *See, e.g.*, *GLM DFW, Inc. v. Windstream Holdings Inc. (In re Windstream Holdings Inc.)*, 614 B.R. 441, 450-51 (S.D.N.Y. 2020) ("As a general rule, creditors have standing to appeal orders … disposing of property of the estate because such orders directly affect the creditors' ability to receive payment of their claims." (citing *Dish Network Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.)*, 634 F.3d 79, 89 (2d Cir. 2011))). Just as Pioneer must establish it has superior title over the Government insofar as it sits in the shoes of the criminal defendant, *see* 21 U.S.C. § 853(n)(6), to prevail Pioneer must also show that its interest is superior to claimants who have overlapping claims. By pleading facts relevant to the superiority of Pioneer's interest and providing a roadmap for discovery, the Amended Petition ensures that an evidentiary hearing on the competing claims of the parties will be "less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958).

At bottom, the Government's mere preference that Pioneer avoid articulating the defects in the overlapping claim of the only competing claimant is not a basis for denying Pioneer the right to amend. This is not a cognizable objection, and any disputes over factual averments are best explored through discovery and resolved through an evidentiary hearing. *See Ballast*, 2023 WL

3301839, at *6 ("[F]actual determinations may not be made at this stage of the litigation, nor will the Court consider the substantive merits of Plaintiffs' claims on a motion to amend.").

> **B.    Amendment Is Not Futile Because the Amended Petition Cures the Original Petition and Pleads an Alternative Basis for Recovery.**

The Government also opposes Pioneer's Amended Petition on the grounds that amendment is futile because Pioneer has pleaded a claim that "has already been dismissed by the Court." Shaddy Decl. Ex. 6 at 1-2. This misconstrues Judge Kahn's decision as well as the effect of Pioneer's Amended Complaint, and as a result the Government cannot meet its burden of establishing that amendment is futile. *See Coniglio v. Cucuzza*, 345 F.R.D. 372, 377 (E.D.N.Y. 2024) ("The burden of proving futility rests on the party opposing the amendment." (cleaned up)).

*First*, Judge Kahn's decision does not foreclose Pioneer from amending its claim as a bona fide purchaser of an unperfected security interest in the Bank of America Accounts because the Court expressly rejected the Government's only argument as to that claim and dismissed Pioneer's claim as a bona fide purchaser of the Pioneer Shares due to a separate and inapplicable provision of the Uniform Commercial Code. The Government's argument to the contrary misapprehends the record of this case. Aside from Article III standing arguments of the Government that were rightly rejected by Magistrate Judge Stewart, the Government previously sought dismissal of Pioneer's Loan and Security Agreements claim on one theory, and one theory only: that Pioneer "fails to state an adequate basis for its second claim because it lacks a perfected security interest in the Subject Assets." Dkt. No. 65-1 at 17. Although Magistrate Judge Stewart agreed with the Government's argument in his R&R, Dkt. No. 132 at 29, Judge Kahn rejected that argument when holding that "Pioneer Bank is correct that an unperfected security interest may still be enforceable against the debtor." Dkt. No. 157 at 21.

The sole argument raised by the Government—that Pioneer could not proceed as a bona fide purchaser of an unperfected security interest under Section 853(n)(6)(B)—was thus ***rejected*** by Judge Kahn, at least as to the Bank of America Accounts. Judge Kahn did not otherwise address Pioneer's security interest in the Bank of America Accounts, because the Government did not otherwise seek to dismiss Pioneer's security interest under the Loan and Security Agreements. In fact, Judge Kahn only dismissed Pioneer's security interest in the *Pioneer Shares*, on the grounds that Pioneer had not pleaded that it was a "protected purchaser" under Section 8-303 of the Uniform Commercial Code. *Id.* at 23-24.[7] The Court reached this conclusion by finding this provision was the "closest analogue to a bona fide purchaser provision governing securities." *Id.* Notably, Judge Kahn did not hold that this provision of Article 8 of the U.C.C., which applies only to investment securities, could or did bar Pioneer's bona fide purchase of unperfected security interests in the Bank of America Accounts. Moreover, this U.C.C. provision was not raised by either party, with the result that Pioneer's security interest in the Bank of America Accounts under the Loan and Security Agreements survives dismissal because the Court could not and did not adjudicate issues that were not placed before it. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) ("In our adversarial system of adjudication, we follow the principle of party presentation.").

Thus, while Pioneer anticipates the Government will argue that Judge Kahn affirmed the dismissal of the *entirety* of Pioneer's security interest under the Loan and Security Agreements in the Subject Property, Judge Kahn plainly held that Pioneer could proceed with an unperfected security interest, and only dismissed Pioneer's claim as to the Pioneer Shares because Pioneer did

---

[7] Pioneer preserves for appeal its claim as a bona fide purchaser of a security interest in the Pioneer Shares under Section 853(n)(6)(B).

not plead that it was a "protected purchaser" of the Pioneer Shares under Article 8 of the U.C.C. *See* Dkt. No. 157 at 24. And, to the extent the Court takes a literal reading of isolated statements from Judge Kahn's decision to extend its conclusions as to the Pioneer Shares to the Bank of America Accounts, the Federal Rules contemplate situations where judges make these kinds of scrivener's errors. *See* Fed. R. Civ. P. 60(a); Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2854 (3d ed.) ("Rule 60(a) permits the correction of clerical mistakes in judgments, orders, or other parts of the record as well as the correction of errors arising from oversight or omission.").

***Second***, to the extent the Court determines that it is bound by the Memorandum-Decision and Order in finding that the ***entirety*** of Pioneer's security interests under the Loan and Security Agreements—*i.e.*, not just as to the Pioneer Shares, but *also* as to the Bank of America Accounts— was dismissed, Pioneer should be afforded an opportunity to cure its petition. "Where the possibility exists that the defect can be cured and there is no prejudice to the defendant, leave to amend at least once should normally be granted as a matter of course." *Meyer v. Seidel*, 89 F.4th 117, 140 (2d Cir. 2023) (reversing trial court for denying leave to amend fraud claim). Pioneer's Amended Petition cures any defects associated with Pioneer's security interests in the Bank of America Accounts because (1) Judge Kahn identified no defect in Pioneer's security interest in the Bank of America Accounts to begin with, and (2) any defect identified would have been in in the course of affirming the R&R's conclusions as to Pioneer's security interests under N.Y. U.C.C. § 4-208, where the Court observed that Pioneer Bank had not alleged that Mann "possesses sufficient rights in the collateral for a security interest to attach." Dkt. No. 157 at 14-17.

Though Pioneer maintains its original petition sufficiently alleged Pioneer's interest in the Subject Property, Pioneer's Amended Petition now pleads additional facts setting forth the factual basis for Pioneer's security interest in the Bank of America Accounts and the funds contained

within. Specifically, Pioneer's claim under Section 853(n)(6)(B) rests on Pioneer's bona fide purchase of an unperfected security interest in the Bank of America Accounts under its Loan and Security Agreements with ValueWise and Heutmaker, and any funds contained therein to the extent they belong to Pioneer or could be pledged as collateral by Mann. *See* Amended Petition ¶¶ 10-30.

Thus, to the extent that funds in the Bank of America Accounts are traceable to Cachet, title to these funds passed to Mann pursuant to his contractual relationship with Cachet. *See* Amended Petition ¶¶ 46-52. Under Cachet's contracts with Mann, Cachet has only a right to payment against Mann in exchange for its disbursement of funds. *Id.* ¶¶ 53-55. New York law has long held that when one party to a contract pays another pursuant to a contractual relationship, the recipient of such funds receives an ownership interest in the funds and the other party merely holds a right to payment to be vindicated through a claim for breach of contract. *See, e.g.*, *Neurological Surgery, P.C. v. Grp. Health Inc.*, 224 A.D.3d 697, 700 (N.Y. 2d Dep't 2024) (holding that "plaintiff's assertion that it had a right to payment … failed to state a cause of action for conversion," *i.e.*, the improper ownership of funds); *Indep. Disc. Corp. v. Bressner*, 47 A.D.2d 756, 757 (N.Y. 2d Dep't 1975) (holding that a right to payment did not establish legal ownership of funds, that plaintiff's conversion claim therefore could not proceed, and that as a result plaintiff was a general creditor). Mann thus had an interest in the funds, Cachet did not, and as a result Pioneer has a security interest in the funds held within the Bank of America Accounts to the extent they stem from Mann's contractual relationship with Cachet.

In addition, title to the funds from Cachet passed to Mann because Cachet was not the victim of fraud but was rather performing under the contracts it had entered into with Mann. *See* Amended Petition ¶¶ 51-52; *see, e.g.*, *Daub v. Future Tech Enter., Inc.*, 65 A.D.3d 1004, 1006,

(N.Y. 2d Dep't 2009) ("[A] fraud cause of action does not lie where the only fraud alleged relates to an alleged breach of contract."). And as Pioneer has also alleged, *see* Amended Petition ¶¶ 68-70, Cachet's knowledge of Mann's activities forecloses any claim of fraud—and thus any claim that Cachet retained an ownership interest in the funds. *See, e.g.*, *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006) ("[P]laintiff cannot close his eyes to an obvious fraud, and cannot demonstrate reasonable reliance without making inquiry and investigation if he has the ability, through ordinary intelligence, to ferret out the reliability or truth about an investment[.]").

Cachet's lack of an ownership interest in the funds it paid Mann pursuant to its contract is confirmed by the non-viability of its claim for a constructive trust, which as a matter of law is barred by the remedies available to Cachet under its contracts. *See In re First Cent. Fin. Corp.*, 377 F.3d 209, 215-16 (2d Cir. 2004) (holding that a constructive trust was not permitted "between *parties to the contract at issue*" because "where a valid agreement controls the rights and obligations of the parties, an adequate remedy at law typically exists," even if the insolvency of the debtor means the remedy "is imperfect" (emphasis in original)). There is thus no viable basis for Cachet to establish an ownership interest in any funds allegedly traceable to Cachet and, thus, such funds are properly subject to Pioneer's security interests in the Bank of America Accounts. While the Government may contend without merit that this is less plausible than Cachet's stated version of events, this and any other questions about Cachet's contractual relationship with Mann should be explored in discovery and resolved at an evidentiary hearing. *See Palin v. New York Times Co.*, 940 F.3d 804, 815 (2d Cir. 2019) ("[I]t is not the district court's province to dismiss a plausible complaint because it is not as plausible as [another party's] theory.").

*Third*, the Amended Petition pleads facts to support an additional claim under Section 853(n)(6)(A) that was never addressed by the Court because it was never previously raised. *See*

Dkt. No. 157 at 10 ("This Court does not read any part of Pioneer Bank's second claim to be an argument for a section 853(n)(6)(A) property interest. As such, this Court only evaluates whether Pioneer Bank has standing to seek relief under section 853(n)(6)(B)."). Pioneer has a legal right, title, or interest in the Subject Property because Pioneer's security interests in the Bank of America Accounts are, among other things, superior to any right, title, or interest of Mann at the time of the of the commission of the acts which gave rise to the forfeiture of the Subject Property. *See* 21 U.S.C. § 853(n)(6)(A). Beginning in 2009, Pioneer entered into various agreements with Mann and his entities, including ValueWise and Heutmaker. *See* Amended Petition ¶¶ 10-24. Because Pioneer's security interests in the Bank of America Accounts at least partially precede the commission of Mann's crimes, Pioneer's security interests are enforceable against the Government under Section 853(n)(6)(A). Allowing Pioneer to amend to include its claim under Section 853(n)(6)(A) is therefore appropriate, particularly as amendment does "no more than state an alternative theory for recovery." *Foman*, 371 U.S. at 182.

## V.     CONCLUSION

Pioneer should be permitted to amend its pleadings. The Amended Petition does not unduly prejudice the Government through undue delay because it has been promptly submitted after Judge Kahn's resolution of the Government's motion to dismiss and the Government's production of documents relevant to Pioneer's claims, and the Government's objection that the Amended Petition improperly pleads facts known to Pioneer before amendment is without merit. Amendment is not futile because Judge Kahn has held that Pioneer may proceed with its claim as a bona fide purchaser of an unperfected security interest in the Bank of America Accounts, and only dismissed its claim as to the Pioneer Shares under a separate and inapplicable provision of the Uniform Commercial Code. Pioneer may therefore proceed with its claim under Section 853(n)(6)(B) and, to the extent the Court finds that the Court dismissed Pioneer's claim as to the

Bank of America Accounts, Pioneer should be allowed to file its Amended Petition because it now pleads additional facts and claims not previously adjudicated by the Court. The Court should therefore grant Pioneer's motion.

Dated: November 1, 2024                     DLA PIPER LLP (US)
        New York, New York

                                     */s/ Robert J. Alessi*

                                     Robert J. Alessi (NDNY Bar Roll No. 101019)
                                     1251 Avenue of the Americas
                                     New York, New York 10020
                                     Tel.: (212) 335-4866
                                     Fax: (518) 935-9767
                                     robert.alessi@us.dlapiper.com

                                     Courtney Saleski (NDNY Bar Roll No. 703877)
                                     Aaron J. Shaddy (NDNY Bar Roll No. 705266)
                                     1650 Market Street - Suite 5000
                                     Philadelphia, PA 19103
                                     Tel.: (215) 656-3300
                                     courtney.saleski@us.dlapiper.com
                                     aaron.shaddy@us.dlapiper.com

                                     *Counsel for Pioneer Bank*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all parties in this action/known counsel of record via the CM/ECF system on this 1st day of November, 2024.


*/s/ Robert J. Alessi*
Robert J. Alessi (NDNY Bar Roll No. 101019)