IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No.   1:20-CR-199 (LEK) (DJS) |
| v. | ) | |
| | ) | |
| MICHAEL T. MANN, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| PIONEER BANK, | ) | |
| | ) | |
| Third-Party Claimant. | ) | |
| _____ | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO PIONEER BANK'S MOTION
TO AMEND ITS PETITION PURSUANT TO FED. R. CIV. P. 15**

Respectfully submitted,

CARLA B. FREEDMAN
United States Attorney

Elizabeth A. Conger
Michael Barnett
Christopher R. Moran
Assistant U.S. Attorneys
Bar Roll Nos. 520872, 519140, 700767

# TABLE OF CONTENTS

I.    Factual and Procedural Summary ...................................................................2

    a.  Pioneer's First Claim...............................................................................3

    b.  Pioneer's Second Claim ..........................................................................4

    c.  Report and Recommendation Dated October 14, 2022............................4

    d.  Decision and Order Dated April 5, 2024.................................................5

    e.  Pioneer's Proposed Amended Petition ....................................................5

II.   Legal Standard...............................................................................................7

III.  Argument ......................................................................................................8

    a.  Amendment of the First Claim Should Be Denied for
        Undue Delay, Bad Faith, and Futility ....................................................8

        i.   Undue Delay.................................................................................9

        ii.  Bad Faith ...................................................................................11

        iii. Futility ......................................................................................12

    b.  Amendment of the Second Claim Should Be
        Denied for Futility ...............................................................................16

CONCLUSION...................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Balintulo v. Ford Motor Co.*, 796 F.3d 160 (2d Cir. 2015) ............................................................... 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................................. 12

*Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436 (2d Cir. 2019) .............................................. 8

*Clarke v. Max Advisors, LLC*, 235 F. Supp. 2d 130 (N.D.N.Y. 2002) ......................................... 8

*Cresswell v. Sullivan & Cromwell*, 922 F.2d 60 (2d Cir. 1990) ............................................... 8,9,10

*Grullon v. City of New Haven*, 720 F.3d 133 (2d Cir. 2013) ..................................................... 7-8

*Jones* v. *Bock*, 549 U.S. 199 (2007) ....................................................................................................... 13

*Lucente v. IBM Corp.*, 310 F.3d 243 (2d Cir. 2002) ........................................................................ 12

*Official Comm. of Unsecured Creditors of Color Tile, Inc.* v. *Coopers & Lybrand, LLP*,
    322 F.3d 147 (2d Cir. 2003) ............................................................................................................ 12-13

*Pacheco v. Serendensky*, 393 F.3d 348 (2d Cir. 2004) ................................................................. 13

*Panther Partners Inc. v. Ikanos Comms., Inc.*, 347 F. App'x 617 (2d Cir. 2009) ......................... 8

*Soo Line R.R. Co.* v. *St. Louis Southwestern Ry. Co.*, 125 F.3d 481 (7th Cir. 1997) .............. 12-13

*State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843 (2d Cir. 1981) ................................. 8

*United States v. Castle,* No. 18-CR-531 (KMK), 2020 WL 4059808 (S.D.N.Y. Jul. 20, 2020).. 14

*United States v. Davis*, No. 3:20-cr-00575-X, 2022 WL 313437 (N.D. Tex. Feb. 2, 2022) ......14

*United States v. Hiller*, No. 07-CR-0568 (JS), 2023 WL 7924180 (E.D.N.Y. Nov. 16, 2023).... 13

*United States v. Nnaji*, No. 05-cr-70120 (BAD), 2005 WL 1049905 (E.D. Mich. Apr. 22, 2005)
    .................................................................................................................................................................. 15

*United States v. One 1965 Cessna 320C Twin Engine Airplane*, 715 F. Supp. 808
    (E.D. Ky. 1989) .................................................................................................................................... 15,16

*United States v. One 1987 Cadillac DeVille*, 774 F. Supp. 221 (D. Del. 1991) ......................... 15

*United States v. Pokerstars*, No. 11-CV-2564 (KMW), 2016 WL 4411421
    (S.D.N.Y. Aug. 19, 2016) ................................................................................................................. 11-12

*United States v. Ribadeneira*, 105 F.3d 833 (2d Cir. 1997) ......................................................... 15

*United States v. Watkins*, 320 F.3d 1279 (11th Cir. 2003) ........................................................... 15

*United States v. Watts*, 786 F.3d 152, 160 (2d Cir. 2015) ......................................................... 13-14

*Wachovia Bank Nat'l Ass'n v. Encap Golf Holdings, LLC*, 690 F. Supp. 2d 311
    (S.D.N.Y. 2010) ...................................................................................................................................... 18

*World Global Capital, LLC v Sahara Rest. Corp.*, 219 A.D.3d 553 (2d Dept 2023).................. 19

**Statutes**

21 U.S.C. § 853(n)(2) ........................................................................................... 2

21 U.S.C. § 853(n)(6)(A) ............................................................................... passim

21 U.S.C. § 853(n)(6)(B) ............................................................................... passim

28 U.S.C. § 636(b)(1)(C) ................................................................................... 16

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 12

Fed. R. Civ. P. 15(a)(2) ....................................................................................... 8

Fed. R. Crim. P. 32.2(c)(1)(A) ......................................................................... 12

**Other Authorities**

N.Y. U.C.C. § 4-208 ...................................................................................... 3, 11

N.Y. U.C.C. § 9-104(a) ..................................................................................... 18

N.Y. U.C.C. § 9-312(b)(1) ....................................................................... 15, 18, 19

N.Y. U.C.C. § 9-317(a)(2)(A) ..................................................................... 18, 19

N.Y. U.C.C. § 9-607 .......................................................................................... 18

N.Y. U.C.C. § 9-314(a) ..................................................................................... 18

The government respectfully submits the following response in opposition to Third-Party Claimant Pioneer Bank's Motion to Amend its Petition Pursuant to Rule 15 of the Federal Rules of Civil Procedure.  First, Pioneer Bank ("Pioneer") should be denied leave to pursue its Amended First Claim in the Amended Petition on the basis of undue delay, bad faith, and futility.  In its proposed Amended First Claim, Pioneer has changed its theory of ownership; it no longer looks to certain checks and provisional credits as the basis for its purported ownership of the funds in the Subject Accounts, and instead asserts a theory of ownership premised upon loan and security agreements from 2009 and 2014.  As Pioneer's proposed amendments are based on documents that have long been in Pioneer's possession, leave for amendment should be denied for undue delay.  Furthermore, these proposed amendments have surfaced at the same time Pioneer has finally acknowledged that it cannot substantiate its First Claim.  Pioneer thus advances a new (and meritless) theory of forfeiture in its Amended First Claim, which it could have asserted back in 2021, in anticipation of its inability to sustain its original (and meritless) First Claim; this is bad faith.

Leave to amend the Petition should also be denied on the basis of futility.  The Amended First Claim is futile for two reasons. First, it wrongly asserts a superior interest in fraud proceeds pursuant to 21 U.S.C. § 853(n)(6)(A).  Second, it wrongly asserts a superior interest in the Subject Accounts pursuant to 21 U.S.C. § 853(n)(6)(B), based on the loan and security agreements, even though Pioneer never perfected its security interest in those accounts.

The Amended Second Claim is also futile. Pioneer still looks to the loan and security agreement entered into with defendant Michael Mann ("Mann") and the ValueWise Entities, on August 12, 2019.  This Amended Second Claim is identical to Pioneer's original Second Claim – a claim that Judge Stewart recommended be dismissed in a Report and Recommendation, which

was affirmed by the Decision and Order issued by Judge Kahn.

## I.    Factual and Procedural Summary

On August 26, 2020, the government obtained a Preliminary Order of Forfeiture as to all of Mann's interest in the following relevant property:

> a.   All funds on deposit in Bank of America account bearing an account number ending in 9506 ("9506 Account")
> Account holder: ValueWise Corporation d/b/a Primacy Search Group
> Balance: $1,444,975.16

> b.   All funds on deposit in Bank of America account bearing an account number ending in 6843 ("6843 Account")
> Account holder: ValueWise Corporation d/b/a Optix Consulting
> Balance: $5,363,936.77

> c.   All funds on deposit in Bank of America account bearing an account number ending in 6103 ("6103 Account")
> Account holder: Heutmaker Business Advisors LLC
> Balance: $7,713,562.99

> d.   30,000 common shares of Pioneer Bancorp Inc., owned by MyPayrollHR.com LLC ("Pioneer Shares").

Dkt. No. 35.

On May 14, 2021, Pioneer filed a Petition, pursuant to 21 U.S.C. § 853(n)(2), claiming all of the funds in the 9506 Account, the 6843 Account, and the 6103 Account (collectively, the "Subject Accounts"), totaling $14,522,474.90, as well as the Pioneer Shares (collectively, with the Subject Accounts, the "Subject Assets"). Dkt. No. 54. In its initial Petition filed in May 2021, Pioneer first alleged that it is a bona-fide purchaser for value pursuant to 21 U.S.C. § 853(n)(6)(B) of a "property interest/security interest" in the funds within the Subject Accounts as a result of Mann's check-kiting scheme (hereinafter, Pioneer's "First Claim"). Dkt. No. 54, ¶¶7-28. Pioneer further alleged that it is a bona-fide purchaser for value pursuant to 21 U.S.C. § 853(n)(6)(B) of all of the Subject Assets per an August 12, 2019 Loan and Security Agreement it had with Mann's

company, ValueWise, and its affiliates ("Pioneer's Second Claim").  *Id., ¶¶*29-51.

###    a.  **Pioneer's First Claim**

In support of its First Claim, Pioneer looked to 36 Bank of America ("BOA") checks written by Mann from the three Subject Accounts on August 29, 2019.  Dkt. No. 54, ¶9.  These checks, totaling $15,588,000, were subsequently deposited into twelve Pioneer accounts held by ValueWise-affiliated entities, and Pioneer extended $15,588,000 in provisional credits to the accounts as the result of the deposit of these checks.  *Id.*, ¶¶9, 10.  Thereafter, Mann had 39 checks drawn from twelve Pioneer accounts held by ValueWise-affiliated entities, for an amount totaling $18,043,000.  *Id.*, ¶11.  By the end of the day, Pioneer paid out the $18,043,000 from the 39 checks.  *Id.*, ¶13.  On the following day, August 30, 2019, BOA returned and called back the $15,588,000 from the 36 BOA checks deposited on the previous day.  *Id.*, ¶14. Accordingly, the twelve Pioneer Accounts from which the 39 checks were subsequently drawn became overdrawn after the BOA recall. *Id*.

Pioneer premised its claim to the specific funds seized from the Subject Accounts by citing to U.C.C. § 4-208, stating:

> [W]hen Pioneer Bank gave a provisional credit of $15,588,000 to the 12 Recipient ValueWise Entities for the 36 BOA Checks, and the 12 Recipient ValueWise Entities then withdrew and applied that provisional credit by using it to cover most of the $18,043,000 withdrawn from Pioneer Bank through 39 Pioneer Bank Checks, Pioneer Bank automatically obtained a perfected security interest in the 36 BOA Checks (as negotiable instruments) and "the proceeds" of the 36 BOA Checks.

Dkt. No. 54, ¶15.  Pioneer further asserted that the alleged "security interest in the 36 BOA Checks and all their proceeds was given to Pioneer in exchange for the antecedent debt," which Pioneer identified as the negative balances in the overdrawn accounts.  *Id.*, ¶17.

In claiming the funds in the Subject Accounts, Pioneer asserted that they were entirely comprised of the proceeds of the 36 BOA checks, stating that "[u]pon information and belief" the

proceeds of the 36 dishonored BOA checks were deposited into the ValueWise BOA account ending in 4559, and subsequently transferred into the Subject Accounts.  Dkt. No. 54, ¶¶21, 22.

### b. **Pioneer's Second Claim**

Pioneer's Second Claim, asserted against both the Subject Accounts and the Pioneer Shares, is based on the August 12, 2019 Loan and Security Agreement it entered into with certain entities affiliated with ValueWise in exchange for a $42 million line of credit.  Dkt. No. 54, ¶¶29, 30.  Citing to the terms of the Security Agreement, Pioneer asserted that it was authorized "to take possession and/or sell or otherwise dispose of all or any of the Collateral at public or private sale." *Id*., ¶37.  The "collateral," as identified in § 2.2(d) of the Security Agreement, includes:

> [A]ll of the [ValueWise Entities'] present and future right, title and interest in and to any and all of the personal property of the [ValueWise Entities] whether such property is now existing or hereafter created, acquired or arising and wherever located from time to time, including without limitation: (i) accounts; (ii) chattel paper; (iii) goods … (viii) instruments; (ix) investment property; (x) documents … (xii) deposit accounts … (xiv) general intangibles; (xv) supporting obligations; and (xvi) records, of, accession to and proceeds and products of the foregoing.

*Id*., ¶36.

The government moved to dismiss Pioneer's Petition on equitable grounds and for lack of standing. Dkt. No. 65. Pioneer opposed the government's Motion to Dismiss (Dkt. No. 80), and the government replied (Dkt. No. 102).

### c. **Report and Recommendation Dated October 14, 2022**

In the October 14, 2022 Report and Recommendation, the Honorable Daniel J. Stewart, United States Magistrate Judge, determined that Pioneer's First Claim adequately alleged injury to establish Article III constitutional standing (Dkt. No. 132 at 22, 25), and that the facts alleged by Pioneer as to its legal interest in the Subject Accounts were sufficient to satisfy its burden at the pleading stage.  *Id.* at 28.  Although Judge Stewart found that Pioneer was not held to the

specificity in tracing at the pleading stage that the government demanded in its motion to dismiss, he noted that "[t]he points raised by the Government in this Court's view raise serious questions about Pioneer's ability to meet that ultimate burden."  *Id.* at 27, fn. 7.

As for Pioneer's Second Claim, Judge Stewart, agreeing with the government, found that Pioneer's failure to perfect its security interest deprived Pioneer of standing on the claim.  Dkt. No. 132 at 29.  Moreover, Judge Stewart found that Pioneer's status to the interest it alleged was akin to an "unsecured creditor" without standing, and its failure to allege possession or control of any specific BOA asset deprived it of bona-fide purchaser status under 21 U.S.C. § 853(n)(6)(B). Dkt. No. 132 at 29, 31.

On October 28, 2022, Pioneer submitted its objections to the Report and Recommendation issued by Judge Stewart.  Dkt. No. 135.

### d.  Decision and Order Dated April 5, 2024

In his Decision and Order, the Honorable Hon. Lawrence E. Kahn, Senior United States District Judge, affirmed Judge Stewart's conclusions in the Report and Recommendation, including the dismissal of Pioneer's Second Claim, stating that "the Court affirms Judge Stewart's conclusions, but based on different reasoning."  Dkt. No. 157 at 2, 24.  This decision is discussed further below.

### e.  Pioneer's Proposed Amended Petition

Pioneer's proposed Amended Petition asserts claims pursuant to § 853(n)(6)(A) and § 853(n)(6)(B); for ease of reference, the Government will refer to these claims as the Amended First Claim and the Amended Second Claim, respectively.

In its first claim in the proposed Amended Petition ("Amended First Claim"), Pioneer asserts an interest pursuant to § 853(n)(6)(A) to funds in BOA accounts ending 9506 and 6843

derived from various loan and security agreements entered into between Pioneer and the ValueWise Entities starting in 2009. Dkt. No. 192-3, ¶¶12-18. Pioneer asserts that "[i]n exchange for providing these loans and lines of credit, beginning in 2009 Pioneer received blanket liens, also known as all-assets security interests, on all ValueWise assets pursuant to a series of security agreements." *Id.*, ¶13. Pioneer cites to a Loan and Security Agreement dated November 2, 2009 in which Pioneer was granted a security in all ValueWise "Collateral," including: "all of the Borrower's present and future right, title and interest in and to any and all personal property of the Borrower whether such property is now existing or hereafter created, acquired or arising and wherever located from time to time," including accounts and deposit accounts belonging to ValueWise. *Id.*, ¶14. Pioneer posits that as ValueWise owned BOA Account 9506 and BOA Account 6843, it had rights in these accounts and the power to transfer rights to those accounts. *Id.*, ¶15. It further asserts that as this agreement, made in 2009, predated Mann's fraud scheme, it "has a legal right, title, or interest in the Subject Property that was vested in Pioneer and is superior to any right, title, or interest of Mann at the time of the commission of the acts which gave rise to the forfeiture of the Subject Property." *Id.*, ¶16. Pioneer does not assert that it perfected its security interest in these accounts, or that it controlled these accounts.

Moreover, Pioneer states, that as it was unaware of any crimes or fraud by Mann at the time of the 2009 Loan and Security Agreement, it was a bona-fide purchaser for value of a property interest/security interest in BOA Account 9506 and BOA Account 6843 pursuant to 21 U.S.C. § 853(n)(6)(B). Dkt. No. 192-3, ¶¶ 17, 18.

Pioneer then asserts an interest in BOA Account 6103 derived from a June 11, 2014 Loan and Security Agreement with Heutmaker in which Pioneer was granted a security interest in Heutmaker Collateral, including "accounts" and "deposit accounts." Dkt. No. 192-3, ¶¶19, 20. As

BOA Account 6103 was opened after the 2014 Loan and Security Agreement, Pioneer asserts that the account is collateral pursuant to the terms of that agreement, in which Pioneer had rights and the power to transfer rights. *Id.*, ¶21. Pioneer states that as its interest in BOA Account 6103 predated the fraud, it has a superior interest in that account pursuant to 21 U.S.C. § 853(n)(6)(A). And, as with the other two accounts, Pioneer again asserts that as the agreement predates its awareness of Mann's crimes and fraud, this establishes Pioneer as a bona-fide purchaser for value of BOA Account 6103 pursuant to 21 U.S.C. § 853(n)(6)(B). *Id.*, ¶¶23, 24. Pioneer does not assert that it perfected its security interest in this account, or that it controlled this account.

As with its original Second Claim, Pioneer premises its second claim in the Proposed Amended Petition ("Amended Second Claim") upon the August 12, 2019 Loan and Security Agreement wherein it extended a $42 million revolving line of credit to the ValueWise Entities, and asserts the bona-fide purchaser theory of ownership, pursuant to 21 U.S.C. § 853(n)(6)(B). Dkt. No. 192-3, ¶¶25, 26. Pioneer cites to the unlimited guaranty signed by Mann in connection with this agreement, and the section of the agreement where Mann agreed to grant Pioneer "a security interest in, a lien on and pledge and assignment of certain collateral, including accounts and deposit accounts." *Id.*, ¶¶28, 29. Pioneer states that it is, through this security interest, a bona-fide purchaser for value of the ownership/security interest in the Subject Assets. *Id.*, ¶¶30-34. Moreover, Pioneer asserts that it was unaware that the property would be subject to forfeiture as Mann's "crimes and fraud did not become known to Pioneer Bank until September 2019." *Id.*, ¶35. Pioneer does not assert that it perfected its security interest in these accounts, or that it controlled these accounts.

## II.    Legal Standard

Generally, leave to amend a pleading should be freely granted. *Grullon v. City of New*

*Haven*, 720 F.3d 133, 139 (2d Cir. 2013); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires").  But "it is within the sound discretion of the district court" to deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (quoting *Kim v. Kimm*, 844 F.3d 98, 105 (2d Cir. 2018)).

"Granting leave to amend is futile if it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim." *Panther Partners Inc. v. Ikanos Comms., Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009). "In considering whether to grant a motion for leave to amend, the court may properly take into account the futility associated with the newly-added claims or defenses." *Clarke v. Max Advisors, LLC*, 235 F. Supp. 2d 130, 151 (N.D.N.Y. 2002) (denying leave to amend to assert certain affirmative defenses).  "[A] proposed amendment to a complaint is futile when it could not withstand a motion to dismiss." *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164-65 (2d Cir. 2015) (quotations omitted).

Moreover, courts may deny a party's motion for leave to amend a pleading "where the motion is made after an inordinate delay." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990). "The burden is on the party who wishes to amend to provide a satisfactory explanation for the delay." *Cresswell*, 922 F.2d at 72. "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend." *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981).

## III.    Argument

### a.    Amendment of the First Claim Should Be Denied for Undue Delay, Bad Faith, and Futility.

In its proposed Amended First Claim, Pioneer newly asserts a superior interest in the Subject Accounts pursuant to 21 U.S.C. § 853(n)(6)(A) (Dkt. No. 192-3, ¶¶16, 22), and an

ownership interest as bona-fide purchaser pursuant to 21 U.S.C. § 853(n)(6)(B) (*Id.*, at ¶¶18, 24). These theories are based on loan and security agreements from 2009 and 2014. *Id.* at ¶¶16, 18, 22, 24. As Pioneer has possessed these agreements since they were entered into in 2009 and 2014, respectively, they were available at the time it filed its original Petition in May 2021. Likewise, they were available on each occasion Pioneer mentioned, generally, that it may seek leave to amend. In view of this, leave to amend should be denied for undue delay.

Furthermore, these proposed – and, as discussed below, meritless – amendments have materialized only in the wake of Pioneer's receipt of Bank of America records showing that the funds in the Subject Accounts at the time of seizure are not traceable to funds transferred from the BOA account ending in 4559. *See* Dkt. No. 192-7. Pioneer thus advances entirely new (and meritless) theories of forfeiture in anticipation of the impact that tracing will have on the viability of its First Claim; this demonstrates bad faith.

Finally, permitting the Amended First Claim would be futile on two separate and independent grounds. The Amended First Claim fails to assert an interest in the seized funds that is superior to the government's. The Amended First Claim also fails because it does not allege that Pioneer had a perfected security interest in, and control of, the Subject Accounts. Indeed, the Amended First Claim is so meritless that Pioneer did not assert it for three and a half years, and asserts it only now because its original First Claim has essentially been defeated and the Second Claim was ordered dismissed more than six months ago.

### i. Undue Delay.

Where delay less significant than that presented in the instant case was considered, the Second Circuit found that delay to be "undue." *Cresswell*, 922 F.2d at 72. In *Cresswell*, the plaintiffs did not move to amend their complaint to assert a new, second claim until "more than 17

months after bringing suit, more than six months after filing their second amended complaint, and more than one month after responding to the motion for summary judgment." *Id*. The Second Circuit noted that the only excuse offered for the delay was that plaintiff's counsel had been unaware of the statute under which they asserted the second claim. *Id.* Accordingly, the Second Circuit found that the district court had not abused its discretion in denying the motion to amend.

Here, the filing of Pioneer's initial claim on May 14, 2021 preceded the motion for amendment by approximately 41 months and 18 days; thus, the delay in the instant case is two-and-a-half times as lengthy as the delay in *Cresswell*. While there has been no motion for summary judgment in this case, the government did file a motion to dismiss in 2021 in which it raised serious concerns about Pioneer's ability to sustain the allegations supporting its First Claim (Dkt. No. 65-1 at 14-17) – concerns that have been borne out given that Pioneer concedes that its First Claim is no longer supportable.

As explanation for the delay, Pioneer offers that "the driving reason for the delay in the Amended Petition proffered by Pioneer was the timing of the April 5, 2024 decision of the Court and the need to evaluate the recently disclosed Bank of America documents." 192-1 at 12. Yet neither of these factors has any bearing on the 2009 and 2014 Loan and Security Agreements, and these excuses fail to explain Pioneer's delay, particularly given that the parties are attempting to proceed expeditiously to hearing. Consequently, Pioneer has failed to meet its burden.[1]

---

[1] Pioneer notes that the government did not object when Pioneer's attorney alluded to amending the petition during several recent status conferences. But of course the government would not be in a position to object until it learned of the specific amendments that Pioneer sought. Once Pioneer disclosed those amendments, the government promptly objected. *See* Dkt. No. 192-8.

Pioneer notes that the government has sought many deadline extensions to identify Mann's victims in this case and the amount each victim is owed. This is correct but irrelevant. The government

### ii.  *Bad Faith.*

Pioneer's effort to amend also evinces bad faith.  Pioneer asserts a new (and meritless) theory of forfeiture, premised on documents and information that it has long had in its possession, at the same time it must disclose that its First Claim is not viable.  *See* Dkt. No. 192-7.  Pioneer acknowledges that it is no longer able to sustain the theory of forfeiture set forth in Pioneer's First Claim, stating that "the Amended Petition no longer pursues Pioneer's security interest under N.Y. U.C.C. § 4-208 relating to the provisional credits Pioneer provided to certain Mann entities, as the recently disclosed Bank of America documents appear to foreclose this argument."  Dkt. No. 192-1 at 8.  But Pioneer fails to identify any new information, beyond the failure of its First Claim, as driving its effort to amend at this particular time.  Pioneer also fails to acknowledge that it could have easily discovered, long ago, that its First Claim was baseless. Pioneer could have obtained Bank of America account statements from, among others, Mann himself, with whom it entered into a consent judgment in Albany County Court in November 2019. In that litigation, Pioneer could have also subpoenaed Bank of America for the account records.

In *United States v. Pokerstars*, No. 11-CV-2564 (KMW), 2016 WL 4411421 (S.D.N.Y. Aug. 19, 2016), Cardroom, a claimant to the property subject to forfeiture, sought leave to amend its original claim in anticipation that the court would likely grant the government's motion to strike its claim.  *Id.*, *7.  As is the case here, the amendment proposed by Cardroom advanced an entirely new theory of forfeiture, premised upon a prior agreement known to Cardroom at the time it filed its initial claim.  *Id*., *7-8.  The government responded that Cardroom's assertion of a new theory

---

has sought these extensions, for years, due to the ongoing litigation among Mann's victims. These litigations, many of which feature Pioneer, essentially involve Mann's victims litigating over who should bear certain of the losses that Mann caused. Until these litigations are resolved, it would be impossible for the Court to enter a restitution order that sets the amount each victim is owed.

and request to amend "smacks of undue delay, bad faith, and dilatory motive." *Id.*, *17. The district court agreed, finding:

> Cardroom was aware of the basic facts underlying this new claim at the time it filed its original claim in 2011. Even if it could not have asserted this new claim in 2011, it could at least have apprised the Government and the Court of the basic nature of its interest in the Software and of the existence of the 2003 Agreement. In addition, Cardroom's complete failure to address its original, defective claim in any of its subsequent briefing lends support to the conclusion that this new claim has been asserted in anticipation of an adverse ruling on its original claim.

*Id.*, at *18-19. Here, Pioneer was fully aware of the facts underlying the proposed Amended First Claim at the time its petition was filed on May 14, 2021, however, it similarly failed to apprise the government and the Court of the nature of this interest. Although Pioneer argues that its failure to "receive documents from Mann in parallel litigation until approximately September 23, 2021" impacted amendment of its petition (Dkt. No. 192-1, at 13, fn. 5), this four-month delay in 2021 fails to explain why Pioneer failed to assert its claim for another three years. The combination of Pioneer's undue delay and bad faith warrants denial of the motion to amend.

### iii. Futility.

Courts assess futility by determining whether the proposed claim could survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See, e.g., Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)"). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In determining whether a petition in an ancillary proceeding states a claim, the Court must assume its allegations to be true. *See* Fed. R. Crim. P. 32.2(c)(1)(A). A petitioner is therefore bound by the allegations in its complaint. *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir.

2003) (quoting *Soo Line R.R. Co.* v. *St. Louis Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997)) ("'[P]laintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts,' and 'judicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told to a court by the most formal and considered means possible'"); *see also Jones* v. *Bock*, 549 U.S. 199, 215 (2007) ("[i]f the allegations [in a complaint], for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim").

There are two separate and independent bases for finding futility.  First, Pioneer's assertion of an interest in the funds in the Subject Accounts, using a superior ownership theory pursuant to 21 U.S.C. § 853(n)(6)(A), fails as a matter of law.  An intervenor asserting an interest in property pursuant to 21 U.S.C. § 853(n)(6)(A) "must … have an interest in the property that is superior to the criminal defendant's because it arose prior to 'the time of the commission of the acts [that] gave rise to the forfeiture.'" *Pacheco v. Serendensky*, 393 F.3d 348, 353 (2d Cir. 2004); *see also United States v. Hiller*, No. 07-CR-0568 (JS), 2023 WL 7924180, at *4 (E.D.N.Y. Nov. 16, 2023) ("criminal proceeds come into existence only when a crime occurs").  And, "[a]ll right, title, and interest in property . . . [subject to criminal forfeiture] vests in the United States upon the commission of the act giving rise to forfeiture." *United States v. Watts*, 786 F.3d 152, 160, 166-67 (2d Cir. 2015) (third party is unlikely to ever prevail in establishing a pre-existing interest in criminal proceeds because such proceeds do not exist before the offense is committed, and the Government's interest vests upon the commission of the offense). As *Watts* noted:

> Because, by definition, the proceeds of an offense do not exist before the offense is committed, and because the government's interest under the relation-back doctrine immediately vests upon the commission of that offense, any proceeds that ensue from the criminal act belong to the government from the moment that they come into existence. … Accordingly, § 853(n)(6)(A) is better suited to defending a third party's right to the 'instrumentalities' of a crime — property used by a defendant

13

to facilitate his criminal acts, but that pre-exists those acts themselves — than to proceeds that necessarily arise only after or upon the commission of the crime.

*Watts*, 786 F.3d at 166-167 (internal quotations, citation omitted).

But for Mann's fraud, the funds in question would not have been present in the Subject Accounts in August/September 2019; consequently, they are crime proceeds. And Pioneer cannot point to a moment in time prior to the fraud at which it had an independent, vested interest in the specific property subject to forfeiture – the funds in the Subject Accounts. In other words, Pioneer's alleged (unperfected) security interest in the Subject Accounts, dating to 2009 and 2014, does not give it a superior interest in fraud proceeds that entered those accounts in 2019, because the United States immediately had a superior, vested interest in those proceeds upon their entering those accounts as part of the fraudulent scheme. *See*, *e.g.*, *United States v. Castle,* No. 18-CR-531 (KMK), 2020 WL 4059808, *3 (S.D.N.Y. Jul. 20, 2020) (that the criminal proceeds were deposited into claimant's bank account did not give claimant right to assert a pre-existing interest in the proceeds of defendant's crime under § 853(n)(6)(A); following *Watts*); *United States v. Davis*, No. 3:20-cr-00575-X, 2022 WL 313437, *5 (N.D. Tex. Feb. 2, 2022) (court dismissed petition for failure to state a claim under § 853(n)(6)(A) because petitioner claimed it acquired its interest when seized funds were deposited into accounts that petitioner solely owned; petitioner did not allege facts to establish it had an interest in seized funds before government's interest vested in them and petitioner could not establish an interest because it cannot have an interest in criminal proceeds under § 853(n)(6)(A)).

There is another (and familiar) reason why the Amended First Claim is futile. The Amended First Claim should be denied based on Judge Stewart's Report and Recommendation as adopted by Judge Kahn. Judge Stewart has already rejected Pioneer's assertion of an unperfected security interest in the Subject Accounts in the context of Pioneer's Second Claim. In his Report

and Recommendation, he stated that "the failure to perfect the security interest deprives Pioneer of standing on this claim." Dkt. No. 132 at 29.  Judge Stewart stated:

> '[A] security interest in a deposit account may be perfected only by control under Section 9-314.' N.Y. U.C.C. Law § 9-312(b)(1). At the time the funds were seized, Pioneer had no present right to possession of the accounts at Bank of America or any funds in that account. Pioneer had, at most, a right to demand payment from the Borrower that could potentially be satisfied from the funds in the account following an appropriate judgment. Such an interest is akin to that of a general creditor, or at best an unsecured creditor. The Second Circuit has specifically held that a general creditor cannot establish standing as a bona-fide purchaser under section 853(n). *United States v. Ribadeneira*, 105 F.3d at 836 [(2d Cir. 1997)]; *see also United States v. Watkins*, 320 F.3d 1279, 1283 (11th Cir. 2003) (same for 'unsecured or general creditor'). In reaching that conclusion, the Second Circuit concluded that the 'interest in the property required' under section 853(n)(6)(B) 'must be an interest in a particular, specific asset, as opposed to a general interest in an entire forfeited estate or account.' *United States v. Ribadeneira*, 105 F.3d at 836.

*Id*. at 31.  Both the Amended First Claim and Amended Second Claim, which is discussed in the next section, simply reassert a theory of ownership premised upon a general, unperfected interest in property over which Pioneer asserts no facts indicating possession or control – a theory that has already been explicitly rejected by Judge Stewart, whose recommendation was adopted by Judge Kahn, in the context of the Second Claim.  In other words, the 2009 and 2014 agreements on which Pioneer relies, while predating the seizure of the funds in the Subject Accounts by many years, do not give Pioneer a superior interest because in all that time, Pioneer failed to perfect its security interest and take control of the Subject Accounts.  *See*, *e.g.*, *United States v. Nnaji*, 05-cr-70120 (BAF), 2005 WL 1049905, *1 (E.D. Mich. Apr. 22, 2005) (people who loaned money to defendant to improve his home, without recording a lien against the property, were unsecured creditors without standing to contest the forfeiture of the property); *United States v. One 1987 Cadillac DeVille*, 774 F. Supp. 221, 223-24 (D. Del. 1991) (granting summary judgment in civil forfeiture action, concluding that an unperfected security interest in a car was insufficient to defeat

forfeiture); *United States v. One 1965 Cessna 320C Twin Engine Airplane*, 715 F. Supp. 808, 812-13 (E.D. Ky. 1989) (granting summary judgment in civil forfeiture action, concluding that unperfected security interest in an airplane was insufficient to defeat forfeiture).

As such, the proposed Amended First Claim should be denied on the ground of futility.

**b.  Amendment of the Second Claim Should Be Denied for Futility.**

In its Amended Second Claim, Pioneer revives its previous claim to ownership of the Subject Accounts and the Pioneer Shares as a bona-fide purchaser for value pursuant to 21 U.S.C. § 853(n)(6)(B).  In reasserting this claim, Pioneer again looks to the 2019 Loan and Security Agreement entered into with the ValueWise Entities as the source of its interest in this property. Dkt. No. 192-3, ¶¶25, 26.  As this claim was dismissed, in its entirety, by the Decision and Order of Judge Kahn, it must be denied for futility.

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  In Judge Kahn's decision on the Report and Recommendation provided by Judge Stewart, he unequivocally affirmed Judge Stewart's conclusions, which include Judge Stewart's unequivocal rejection of Pioneer's Second Claim.  Dkt. No. 157 at 2, 24.  Judge Kahn twice stated that he "affirms Judge Stewart's conclusions," but for "different reasoning." *Id*.

The effect of this affirmance was the dismissal of the Second Claim.  Accordingly, Pioneer may seek relief through eventual appeal to the Second Circuit, but its effort to revive its Second Claim through amendment should be denied as futile.

Pioneer cites to Judge Kahn's observation that "Pioneer Bank is correct that an unperfected security interest may still be enforceable against the debtor," as a holding on this particular issue. *See* Dkt. No. 192-1 at 16, citing to Dkt. No. 157 at 21.  It is not.  The term "may" indicates that

16

something exists within the realm of possibilities, not that it was necessarily true in the case of the interest held by Pioneer through the August 12, 2019 Loan and Security Agreement.  For instance, consistent with "may" indicating a possibility, Judge Kahn found that Pioneer could not assert a valid claim based on its unperfected security interest in the Pioneer Shares.

Judge Kahn did not specifically address the Subject Accounts, but he adopted Judge Stewart's conclusions, and Judge Kahn's reasoning with respect to the Pioneer Shares – Pioneer did not control the shares, so it did not carry its burden of showing it was a bona-fide purchaser of the shares – applies with equal force to the Subject Accounts.

Pioneer never sought clarification or reconsideration of Judge Kahn's decision.  Moreover, on May 7, 2024, during the parties' first status conference following that decision, Pioneer's counsel admitted that Judge Kahn had dismissed its Second Claim. Specifically, after an Assistant U.S. Attorney summarized the impact that Judge Kahn's decision had on the respective claims and stated "[i]f I try to harmonize those two decisions, my reading of that, your Honor, is that … Pioneer's first claims survives but Pioneer's second claim is dismissed ..." Pioneer's counsel responded: "[t]he first is Mr. Barnett correctly rehearses Judge Kahn's decision about knocking out one of our claims. I don't think it's likely but it's possible that the – the documents could allow us to amend our petition to reassert that claim that was knocked out." *See* Dkt. No. 192-4 at 9:14-17, 12:4-8.  Pioneer never sought clarification or reconsideration of Judge Kahn's decision because it properly understood that decision to have dismissed its Second Claim.[2]

---

[2] Pioneer's memorandum of law contains this extraordinarily incorrect passage:

> In reversing Magistrate Judge Stewart's Report and Recommendation (the
> 'R&R'), Judge Kahn found that because Pioneer had entered into Loan and
> Security Agreements with certain Mann Entities, Pioneer had sufficiently pleaded
> that it was a bona-fide purchaser of an unperfected security interest against the

Dismissal was proper. A security interest in a deposit account "may be perfected only by control" of the account. N.Y. U.C.C. §§ 9-312(b)(1), 9-314(a). *See also* N.Y. U.C.C. § 9-104(a); *Wachovia Bank Nat'l Ass'n v. Encap Golf Holdings, LLC*, 690 F. Supp. 2d 311, 338 n. 6 (S.D.N.Y. 2010). Perfection and control are not empty formalities. When a creditor has a perfected security interest in bank accounts, for example, it can engage in self-help, and execute on its interest without resort to the courts.[3] A creditor with only an unperfected security interest, by contrast, is more akin to a general, unsecured creditor, because the holder of an unperfected security interest must reduce their claim to a judgment, prior to being able to execute on it (this is why Pioneer had to sue Mann and obtain a judgment against him, as opposed to just exercising self-help against the Subject Accounts). As stated in N.Y. U.C.C. § 9-607, official comment no. 7:

> If a security interest in a deposit account is unperfected … the depositary institution ordinarily owes no obligation to obey the secured party's instructions. See Section 9-341. To reach the funds without the debtor's cooperation, the secured party must use an available judicial procedure.

Pioneer's unperfected security interest is exceedingly weak, and makes it a general, unsecured creditor. *See*, *e.g.*, N.Y. U.C.C. § 9-317(a)(2)(A) ("A security interest … is subordinate to the rights of … a person that becomes a lien creditor before the earlier of the time the security interest

---

forfeited Bank of America Accounts at issue in these proceedings, pursuant to 21 U.S.C. § 853(n)(6)(B).

Dkt. No. 192-1 at 1. Judge Kahn did not "reverse" the R&R – he affirmed it. Judge Kahn did not specifically address the Subject Accounts but he adopted Judge Stewart's conclusions – all of them, including with respect to the Subject Accounts. And Pioneer never sought clarification or reconsideration of Judge Kahn's decision.

[3] Had Pioneer controlled the Subject Accounts as a secured creditor, Mann could not have used those accounts as part of his fraudulent scheme. Indeed, unless a security interest in a bank account is perfected, the interest is worthless, because the creditor will have no assurance that at the time of default the account will contain any funds. Pioneer's claim fails because of choices it made. Pioneer, a sophisticated party, either chose not to perfect its security interest in the Subject Accounts, or was simply negligent and forgot to do so.

… is perfected"); *see also*, *e.g.*, *World Global Capital, LLC v Sahara Rest. Corp.*, 219 A.D.3d 553 (2d Dept 2023) (lower court should have denied the creditor's request for a preliminary injunction as it failed to establish that its unperfected security interest in the subject bank account had priority over the purchaser's judgment lien per N.Y. U.C.C. § 9-312(b)(1), and thus the creditor was unlikely to prevail on the merits). This Court has already rejected the notion that Pioneer can assert a superior interest over accounts, and the funds in those accounts, over which Pioneer never had control. Permitting Pioneer to reassert this claim would be futile.

Finally, Pioneer's claims with respect to Cachet are irrelevant. *See* Dkt. No. 192-1, at ¶¶23, 24, and Dkt. No. 192-3, ¶¶48-71. Pioneer argues, among other things, that title to certain funds passed from Cachet to Mann, and that Cachet is only an unsecured creditor of Mann. While this may be true, it is irrelevant to determining whether Pioneer has a superior interest in seized funds as compared to the government.

## CONCLUSION

WHEREFORE, for the preceding reasons, the Court should deny Pioneer's Motion to Amend its Petition.

DATED this 18th day of November, 2024.

<div align="right" style="margin-left: 40%;">

Respectfully submitted,

CARLA B. FREEDMAN
United States Attorney

By:    */s/ Elizabeth A. Conger*
       Elizabeth A. Conger
       Michael Barnett
       Christopher R. Moran
       Assistant U.S. Attorneys
       Bar Roll Nos. 520872, 519140, 700767

</div>