## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.    1:20-CR-199 (LEK) (DJS) |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL T. MANN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| CACHET FINANCIAL SERVICES, | ) | |
| | ) | |
| Third-Party Claimant. | ) | |
| | ) | |

### Government's Pre-Hearing Brief

The United States of America, by and through its counsel of record, the United States

Attorney for the Northern District of New York, respectfully submits its pre-hearing brief.


Dated: October 3, 2025                     Respectfully submitted,

                                          JOHN A. SARCONE III
                                          Acting United States Attorney

                                          Michael Barnett
                                          Christopher R. Moran
                                          Assistant United States Attorneys
                                          Bar Roll Nos. 519140 and 700767

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................. ii

I.    Statement of the Case ...................................................................................1

II.   Statement of Law ........................................................................................3

III.  Expected Witness Testimony ......................................................................9

    A.  Hanan Succar..........................................................................................9

    B.  Alyssa Daversa .....................................................................................10

IV.   Legal and Evidentiary Issues That May Arise During the Hearing ...........12

    A.  A Hearing Witness's Deposition Testimony Can Be Used to Refresh Recollection, or, if Inconsistent with Trial Testimony, to Impeach and as Substantive Evidence of Matters Asserted in the Deposition .........................................................12

    B.  Summary Witness and Summary Charts.................................................14

    C.  Judicial Notice of Other Cases Over the Same Operative Set of Facts...................15

    D.  The Government Will Seek Exclusion of a Document Offered by Cachet..............16

V.    Conclusion..................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Aktas v. JMC Dev. Co., Inc.*, No. 1:09-CV-01436 (MAD),
    2013 WL 55827 (N.D.N.Y. Jan. 3, 2013) .......................................................................... 14-15

*Baker v. Harrison*,
    180 A.D.3d 1210 (3rd Dep't 2020) ....................................................................................... 5

*Briggs v. Goodyear Tire & Rubber Co.*,
    79 F.Supp.2d 228 (W.D.N.Y.1999) ...................................................................................... 8

*Cachet Financial Services v. MyPayrollHR*,
    1:19-CV-1181 (FJS), 2020 WL 5232275 (N.D.N.Y. Sept. 2, 2020) ...................................... 8

*Carlisle v. Bd. of Trs. of Am. Fed'n of New York State Teamsters Conf. Pension & Ret. Fund*,
    2025 WL 438123 (N.D.N.Y. 2025) .................................................................................... 15

*United States v. Catala*,
    870 F.3d 6 (2d Cir. 2017) ..................................................................................................... 5

*Cipciao, LLC v. M Chow One, LLC*,
    No. 20-CV-5982 (JMF), 2021 WL 1141567 (S.D.N.Y. March 24, 2021) ............................. 7

*Coral Cap. Sols. LLC v. Disrupt Soc.*, LLC,
    No. 24-CV-3940 (AS), 2025 WL 1424441 (S.D.N.Y. May 16, 2025)................................... 6

*Counihan v. Allstate Ins. Co.*,
    194 F.3d 357 (2d Cir. 1999).............................................................................................. 5, 7

*Fagiola v. Nat'l Gypsum Co. AC &S, Inc.*,
    906 F.2d 53 (2d Cir. 1990)................................................................................................. 15

*First Cent. Fin. Corp.*,
    377 F.3d 209 (2d Cir. 2004)........................................................................................... 5, 7, 8

*Gargano v. Morey*,
    165 A.D.3d 889 (2d Dept 2018) .......................................................................................... 6

*Genesis Glob. Holdco, LLC*,
    658 B.R. 31 (Bankr. S.D.N.Y. 2024)................................................................................... 7

*Jaffer v. Hirji*,
    887 F.3d 111 (2d Cir. 2018)................................................................................................. 6

*Knopf v. Sanford*,
  132 A.D.3d 416 (2015) ............................................................................................ 9

*LeClair v. Raymond*,
  No. 1:19-CV-28 (BKS/DJS), 2022 WL 219609 (N.D.N.Y. Jan. 25, 2022) ............................ 12

*Marshall v. Randall*,
  719 F.3d 113 (2d Cir. 2013) .................................................................................... 13

*Maus v. Baker*,
  641 Fed. App'x 596 (7th Cir. 2016) ........................................................................ 13

*Morgan v. Hartman*, No. 23-7336-CV, 2025 WL 615166 (2d Cir. Feb. 26, 2025) ................... 15

*Northern Shipping Funds I, LLC v. Icon Capital Corp.*,
  921 F. Supp. 2d 94 (S.D.N.Y. 2013) ...................................................................... 7-8

*Peck v. Cnty. of Onondaga, New York*,
  2025 WL 330496 (N.D.N.Y. Jan. 28, 2025) ............................................................. 17

*Rizzo v. Health Rsch., Inc.*,
  2016 WL 632546 (N.D.N.Y. Feb. 16, 2016) ............................................................. 17

*Sharp v. Kosmalski*,
  40 N.Y.2d 119 (N.Y. 1976) ....................................................................................... 6

*Staudinger+Franke GmbH v. Casey*,
  13-CV-6124 (JGK), 2015 WL 3561409 (S.D.N.Y. June 8, 2015) ................................... 6

*United States v. Andrews*,
  530 F.3d 1232 (10th Cir. 2008) ................................................................................ 7

*United States v. Blackwood*,
  355 F. App'x 207 (2d Cir. 2010) ............................................................................. 15

*United States v. Coluccio*,
  51 F.3d 337 (2d Cir. 1995) ........................................................................................ 5

*United States* v. *Daugerdas*,
  892 F.3d 545 (2d Cir. 2018) ...................................................................................... 3

*United States v. Gil*,
  297 F.3d 93 (2d Cir. 2002) ...................................................................................... 12

*United States* v. *Hooper*,
  229 F.3d 818 (9th Cir. 2000) .................................................................................... 4

*United States* v. *Kennedy*,
   201 F.3d 1324 (11th Cir. 2000) ................................................................. 4

*United States v. Milkiewics*,
   470 F.3d 390 (1st Cir. 2006) .................................................................... 14

*United States v. Natale*,
   526 F.2d 1160 (2d Cir. 1975) ................................................................... 12

*United States v. Pokerstars*,
   No. 11 Civ. 2564 (LBS), 2012 WL 1659177 (S.D.N.Y. May 9, 2012) ................... 9

*United States v. Sharma*,
   No. 18-CR-340 (LGS), 2023 WL 1365138 (S.D.N.Y. Jan. 31, 2023) ................... 7

*United States v. Truman*,
   688 F.3d 129 (2d Cir. 2012) ..................................................................... 14

*United States v. Vilar*,
   No. 05-CR-621 (RJS), 2024 WL 4182598 (S.D.N.Y. Sept. 12, 2024) ................... 5

*United States v. Watts*,
   786 F.3d 152 (2d Cir. 2015) ...................................................................... 3

*Van Brunt v. Rauschenberg*,
   799 F. Supp. 1467 (S.D.N.Y. 1992) ............................................................. 6

*Willis Mgmt. (Vermont), Ltd.* v. *United States*,
   652 F.3d 236 (2d Cir. 2011) ...................................................................... 4

## Rules

Fed. R. Civ. P. 26(a)(1) ............................................................................. 16
Fed. R. Civ. P. 26(e)(1) ............................................................................. 16
Fed. R. Civ. P. 37(c) ................................................................................ 17
Fed. R. Crim. P. 32.2 ................................................................................ 3
Fed. R. Crim. P. 32.2(c) ............................................................................ 4
Fed. R. Evid. 1006 ................................................................................... 14
Fed. R. Evid. 612(b) ............................................................................. 12, 13
Fed. R. Evid. 613(a) ................................................................................. 13
Fed. R. Evid. 613(b) ................................................................................. 13
Fed. R. Evid. 801(d)(1)(A) ..................................................................... 13, 14
Fed. R. Evid. 1006 ................................................................................... 14

**Statutes**

18 U.S.C. § 981(a)(1)(C) ................................................................................................ 3

18 U.S.C. § 981(f) .......................................................................................................... 3

18 U.S.C. § 1028A .......................................................................................................... 1

18 U.S.C. § 1343 ............................................................................................................. 1

18 U.S.C. § 1344 ............................................................................................................. 1

18 U.S.C. § 1349 ............................................................................................................. 1

18 U.S.C. § 1956(c)(7) .................................................................................................... 3

18 U.S.C. § 1961(1) ........................................................................................................ 3

21 U.S.C. § 853 ............................................................................................................... 3

21 U.S.C. § 853(c) .......................................................................................................... 4

21 U.S.C. § 853(n) .......................................................................................................... 4

21 U.S.C. § 853(n)(2) ..................................................................................................... 2

21 U.S.C. § 853(n)(6) ..................................................................................................... 4

21 U.S.C. § 853(n)(6)(a) ............................................................................................. 4-5

26 U.S.C. § 7206(1) ........................................................................................................ 1

28 U.S.C. § 2461(c) ........................................................................................................ 3

## I.      **Statement of the Case**

Cachet Financial Services ("Cachet") provided Automated Clearing House (ACH) services to payroll service providers (also known as "remarketers"), such as MyPayrollHR.com, LLC ("MyPayroll"), which was a company owned and operated by the defendant, Michael T. Mann ("Mann").  Cachet's ACH services were supposed to work as follows: A remarketer such as MyPayroll would submit electronic instructions that initiated an electronic transaction that would cause money to be withdrawn from an employer's bank account, paid into Cachet's clearing or settlement account, and then paid out to the employer's employees.  In theory, these transactions would balance out, and Cachet's settlement account acted as a conduit for employers to pay money to their employees through periodic paychecks.

Mann, as part of the overall financial fraud scheme to which he pled guilty, used Cachet's ACH services as part of his kiting scheme.  When the entire scheme collapsed in 2019, millions of dollars that Mann had routed through Cachet's settlement account were transferred to three Bank of America accounts that were later seized by the Government.

Cachet seeks all of the funds that the Government has seized from Mann – $14,522,474.90 (the "Seized Funds"), formerly contained within three Bank of America accounts (the "Seized Accounts").  Cachet asserts a constructive trust over the Seized Funds that it claims give it an interest in those funds that is superior to the Government's.

Mann pled guilty, on August 12, 2020, to a 12-count information charging conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1349, 1343 (Count 1); aggravated identity theft, in violation of 18 U.S.C. § 1028A (Count 2); bank fraud, in violation of 18 U.S.C. § 1344 (Counts 3 through 11); and filing a false tax return, in violation of 26 U.S.C. § 7206(1) (Count 12).  Mann PA at ¶ 1(a).

Mann agreed to forfeit, as proceeds of his fraud crimes, the following:

- Bank of America account bearing an account number ending in 9506
  ("9506 Account")
  Account holder: ValueWise Corporation d/b/a Primacy Search Group
  Balance: $1,444,975.16

- Bank of America account bearing an account number ending in 6843
  ("6843 Account")
  Account holder: ValueWise Corporation d/b/a Optix Consulting
  Balance: $5,363,936.77

- Bank of America account bearing an account number ending in 6103
  ("6103 Account")
  Account holder: Heutmaker Business Advisors LLC
  Balance: $7,713,562.99

- 30,000 common shares of Pioneer Bancorp Inc., owned by MyPayrollHR.com LLC

- Vehicle – a 2020 Jeep Gladiator, color black, Vehicle Identification Number
  1C6HJTFG4LL115264

- A money judgment in the amount of $101,038,793.31.

Mann PA at ¶ 1(e). These are all criminal proceeds from the wire fraud conspiracy, and the

substantive acts of bank fraud, to which Mann pled guilty. *See* Mann Information (dkt. no. 28) at

pp. 11-12.

On August 26, 2020, the Court entered a Preliminary Order of Forfeiture. Dkt. no. 35.

Two victims brought third-party petitions seeking turnover of certain of the seized assets.

Pioneer Bank's petition has been dismissed and is not the subject of this action. On May 13,

2021, Cachet filed an initial petition, pursuant to 21 U.S.C. § 853(n)(2), claiming all of the funds

in two of the seized accounts. Dkt. no. 51. The Government moved to dismiss both the initial

petition and then Cachet's first amended petition, but the Court denied the motions to dismiss.

Cachet then filed a second amended petition, dkt. no. 167, which claims all of the Seized Funds.

Cachet asserts that these funds are Cachet's, specifically that these funds are a portion of the

$19,199,175.74 that Mann fraudulently caused it to send to Mann-controlled and other accounts, in the final days of the fraud.  *See*, *e.g.*, Petition at ¶¶ 6-11 (dkt. no. 167).

The Government acknowledges that the Seized Funds are traceable to Cachet. But Cachet cannot otherwise meet the elements for establishing a constructive trust, and additional, equitable considerations counsel against a finding of a constructive trust.

A hearing on Cachet's claim is scheduled for October 14-15, 2025.

## II.    <u>Statement of Law</u>

Fraud proceeds are subject to forfeiture to the United States.  18 U.S.C. § 981(a)(1)(C) (incorporating 18 U.S.C. § 1956(c)(7) (in turn incorporating 18 U.S.C. § 1961(1))).  The Government may seek, and the Court must order, the forfeiture of such property in a criminal case involving fraud crimes that give rise to forfeiture.  28 U.S.C. § 2461(c).  The procedures for criminal forfeiture are governed by 21 U.S.C. § 853 and Federal Rule of Criminal Procedure 32.2.  28 U.S.C. § 2461(c).

When property is subject to forfeiture to the United States, title to such property vests in the United States upon the commission of the criminal acts giving rise to forfeiture.  18 U.S.C. § 981(f); 21 U.S.C. § 853(c).  Under this principle, known as the relation-back doctrine, "the government's interest in the proceeds of a fraud vests as soon as those proceeds come into existence, and is therefore superior to that of any subsequent third-party recipient of those funds (unless the third party is a bona fide purchaser for value)."  *United States* v. *Daugerdas*, 892 F.3d 545, 548 (2d Cir. 2018).  In other words, "any proceeds that ensue from the criminal act belong to the government from the moment that they come into existence."  *United States v. Watts*, 786 F.3d 152, 167 (2d Cir. 2015).

A third party, referred to by statute as a petitioner, may contest the Government's forfeiture of property in a criminal case through an ancillary proceeding. *See* 21 U.S.C. § 853(n); Fed. R. Crim. P. 32.2(c). A party can overcome the Government's criminal forfeiture of property by demonstrating that it falls within one of two categories:

> (A)     the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property . . .; or

> (B)     the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture . . .

21 U.S.C. § 853(n)(6). The third-party petitioner bears the burden of proving its interest by a preponderance of the evidence. *See* 21 U.S.C. § 853(n)(6). If the petitioner cannot meet the requirements of either subsection 6(A) or 6(B), it cannot demonstrate an interest in property subject to forfeiture. Courts cannot carve out additional grounds for relief no matter how innocent or sympathetic the petitioner may be. *See, e.g., United States* v. *Hooper*, 229 F.3d 818, 822-23 (9th Cir. 2000) (given the clear direction in section 853(n)(6) limiting recovery to two categories of claimants, courts are not at liberty to create additional grounds for relief); *United States* v. *Kennedy*, 201 F.3d 1324, 1335 (11th Cir. 2000) (alternative grounds set forth in sections 853(n)(6)(A) and (B) are the only grounds for recovery in ancillary proceedings).

Cachet's constructive trust claim falls under § 853(n)(6)(A). *See Willis Mgmt. (Vermont), Ltd.* v. *United States*, 652 F.3d 236, 242 (2d Cir. 2011). A third party satisfies the criteria of § 853(n)(6)(A) if it had an interest in the property "at the time of the commission of the acts which gave rise to the forfeiture of the property," *id.*; in other words, at the time of the offense. Because

4

a priority of ownership claim under subsection (6)(A) embodies the relation-back doctrine, a third party that had a legal interest in the forfeited property before the underlying crime was committed has standing to contest forfeiture in any ancillary proceedings on the ground that it had an interest in the property before the government's interest vested (i.e., when the crime was committed). *See United States v. Catala*, 870 F.3d 6, 10 (1st Cir. 2017).

A constructive trust is a judicially created remedy that can give a fraud victim a superior claim to specific, traceable assets stolen from the victim. In New York, a constructive trust can be imposed when the following factors are met: (1) a confidential or fiduciary relationship between defendant and petitioner; (2) a promise, express or implied, made by the defendant to the petitioner; (3) a transfer by the petitioner made in reliance on that promise; (4) the defendant's unjust enrichment; (5) the petitioner's showing that they lack an adequate legal remedy; and (6) tracing of the petitioner's property to the assets subject to forfeiture. *United States v. Vilar*, No. 05-CR-621 (RJS), 2024 WL 4182598, at *4 (S.D.N.Y. Sept. 12, 2024) (citing *Fed. Ins. Co. v. United States*, 882 F.3d 348, 372-73 (2d Cir. 2018)); *In re First Cent. Fin. Corp.*, 377 F.3d 209, 215 (2d Cir. 2004); *United States v. Coluccio*, 51 F.3d 337, 340 (2d Cir. 1995)). There may also be a seventh factor, that imposing a constructive trust must be equitable. *Vilar*, 2024 WL 4182598, at *4. (citing *LMT Cap. Mgmt., LLC v. Gerardi*, 947 N.Y.S.3d 338 (1st Dep't 2012)).

These elements do not have to be strictly established, see, e.g., *Baker v. Harrison*, 180 A.D.3d 1210, 1211 (3rd Dep't 2020), but New York courts insist upon a showing that "property is held under circumstances that render unconscionable and inequitable the continued holding of the property and that the remedy is essential to prevent unjust enrichment." *Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 361-362 (2d Cir. 1999).

Some of these constructive trust elements are further elaborated upon as follows:

*A confidential or fiduciary relationship between defendant and petitioner*. "A confidential or fiduciary relationship exists between two persons or entities when one of them is under a duty to act for or to give advice for the benefit of the other upon matters within the scope of the relation." *Gargano v. Morey*, 165 A.D.3d 889, 890 (2d Dept 2018) (citing *AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co.*, 11 N.Y.3d 146, 158 (N.Y. 2008)). "Such a relationship exists where confidence is reposed on one side, and there is resulting superiority and influence on the other." *Id.* (citation omitted).

Most – but not all – "confidential relationship" findings are made in the context of family or intimate relationships. *See Van Brunt v. Rauschenberg*, 799 F. Supp. 1467, 1474 (S.D.N.Y. 1992). "Courts regularly dismiss claims for a constructive trust when addressing conventional business relationships where nothing approaching a confidential or fiduciary relationship exists." *Staudinger+Franke GmbH v. Casey*, No. 13-CV-6124 (JGK), 2015 WL 3561409, *13 (S.D.N.Y. June 8, 2015) (collecting cases); *see also Coral Cap. Sols. LLC v. Disrupt Soc.*, LLC, No. 24-CV-3940 (AS), 2025 WL 1424441, at *4 (S.D.N.Y. May 16, 2025) (citing *Staudinger* and declining to find a constructive trust in the context of a business dispute).

*A promise, express or implied, made by the defendant to the petitioner*. "Even without an express promise, however, courts of equity have imposed a constructive trust upon property transferred in reliance upon a confidential relationship. In such a situation, a promise may be implied or inferred from the very transaction itself." *Sharp v. Kosmalski*, 40 N.Y.2d 119, 122 (N.Y. 1976); *see also Jaffer v. Hirji*, 887 F.3d 111, 115 (2d Cir. 2018).

*The defendant's unjust enrichment*. "Unjust enrichment results when a person retains a benefit which, under the circumstances of the transfer and considering the relationship of the parties, it would be inequitable to retain. … What the New York courts do insist upon is a showing

6

that property is held under circumstances that render unconscionable and inequitable the continued

holding of the property and that the remedy is essential to prevent unjust enrichment." *Counihan*,

194 F.3d at 361-362.  The unjust enrichment element "is the most important since the purpose of

the constructive trust is prevention of unjust enrichment."  *In re First Cent. Fin. Corp*., 377 F.3d.

at 212 (internal citations omitted). *Accord In re Genesis Glob. Holdco, LLC*, 658 B.R. 31, 55

(Bankr. S.D.N.Y. 2024).

Unjust enrichment does not necessarily result when seized assets, which the defendant

forfeited, are distributed equitably among victims. *United States v. Andrews*, 530 F.3d 1232, 1238

(10th Cir. 2008) ("The district court acted within the boundaries of sound discretion in deciding

that the other victims would not be unjustly enriched by sharing in the money recovered from their

defrauder").  *See also United States v. Sharma*, No. 18-CR-340 (LGS), 2023 WL 1365138, at *4

(S.D.N.Y. Jan. 31, 2023) ("Courts have recognized that even when a victim of fraud can trace their

investments in the criminal proceeds, it would be inequitable to prioritize their claims over those

of other creditors") (citing *Andrews*, *United States v. Ramunno*, 599 F.3d 1269, 1275 (11th Cir.

2010), and *United States v. Durham*, 86 F.3d 70, 73 (5th Cir. 1996)).

Also, as a matter of law, the existence of a written agreement between two parties precludes

a finding of unjust enrichment. *In re First Cent. Fin. Corp.*, 377 F.3d at 209, 213-15. *See Cipciao,

LLC v. M Chow One, LLC*, No. 20-CV-5982 (JMF), 2021 WL 1141567, *6 (S.D.N.Y. March 24,

2021) ("Under New York law, the existence of a valid and enforceable written contract generally

precludes recovery on either an unjust enrichment or a constructive trust theory against another

party to the contract"); *Northern Shipping Funds I, LLC v. Icon Capital Corp.*, 921 F. Supp. 2d

94, 107 (S.D.N.Y. 2013) ("where a valid agreement controls the rights and obligations of the

parties, an adequate remedy at law typically exists, and a constructive trust should not be imposed.

Northern has a contractual claim against Icon and there is no reason to believe that the legal remedy is inadequate this case.") (cleaned up); *Briggs v. Goodyear Tire & Rubber Co.*, 79 F.Supp.2d 228, 236–37 (W.D.N.Y.1999) ("Where there exists a valid and enforceable written contract governing a particular subject matter, quasi contractual claims, including claims for unjust enrichment and constructive trust are not allowed. ... Settled law indicates that the equitable claims of unjust enrichment and constructive trust are unavailable where plaintiffs have rights under a valid and enforceable contract.") (internal quotation marks and citations omitted).

In fact, when Cachet sued Mann and MyPayroll, and moved for a default judgment on most of its claims, Senior United States District Judge Frederick J. Scullin, Jr. denied Cachet's motion for entry of a default judgment on its unjust enrichment and conversion claims against MyPayroll and Mann, finding these claims to be duplicative of its breach of contract claim against MyPayrollHR and its fraud claim against Mann (on which Judge Scullin did grant the motion for a default judgment). *Cachet Financial Services v. MyPayrollHR*, 1:19-CV-1181 (FJS), 2020 WL 5232275, *6-10 (N.D.N.Y. Sept. 2, 2020).

***The petitioner's showing that they lack an adequate legal remedy***. Where there exists an adequate legal remedy, a constructive trust should not be imposed. *See also In re First Cent. Fin. Corp.*, 377 F.3d at 215 ("New York courts have clarified that as an equitable remedy, a constructive trust should not be imposed unless it is demonstrated that a legal remedy is inadequate") (alterations and internal quotation marks omitted)). This is true even when a legal remedy, such as a breach of contract lawsuit, will not make a party whole. *See id.* at 216 ("FCIC, on the other hand, has a contractual claim directly against FCFC—arising out of the Agreement—which can be pursued in the bankruptcy proceeding. We concede that FCIC, like many other creditors, will not, in all probability, be made whole in the proceedings; but that does not mean its remedy is legally

8

inadequate, simply that it is imperfect."); *United States v. Pokerstars*, No. 11 Civ. 2564 (LBS), 2012 WL 1659177, *4 (S.D.N.Y. May 9, 2012) (customer of online poker company, who could sue the company if government's forfeiture action was successful, had an adequate remedy at law, and thus could not contest the forfeiture as the beneficiary of a constructive trust). "The adequacy of the legal remedy for damages does not depend on the collectability of the claim." *Knopf v. Sanford*, 132 A.D.3d 416, 417 (2015) (citing *American Cities Power & Light Corp. v. Williams,* 189 Misc. 829, 835–836 (Sup. Ct., N.Y. County 1947)).

### III.   Expected Witness Testimony

### A.  Hanan Succar

Ms. Succar started working at Cachet in 2004. From about 2011 to 2019, she was Cachet's Director of Operations, reporting to its President, Aberash Asfaw. In 2019, Cachet had nearly 300 clients, called remarketers, located across the country.

Cachet used the same standard agreements for every remarketer client. Michael Mann did not sign any agreement with Cachet. Cachet's contracts were with MyPayroll. Cachet had a business relationship with MyPayroll for about six years. Prior to the company's collapse in 2019, there was nothing different about Cachet's relationship with MyPayroll as compared to its relationship with any other client.

From 2015 to 2018, Cachet observed several instances in which MyPayroll was transferring funds in ways that avoided Cachet's clearing or settlement account, in violation of Cachet's agreements with MyPayroll. When this violation occurred in May 2018, for instance, Ms. Succar informed MyPayroll that it had created a "huge exposure to Cachet and My payroll HR is in breach of the contract that requires that all direct deposit funds must settle to the Cachet clearing account." Each time this violation occurred, MyPayroll provided an explanation, which Cachet accepted. In response to these incidents, Cachet did not increase its scrutiny of MyPayroll's

transactions. Although Cachet employees would sometimes refer to their "Risk Management Department," Cachet never had a Risk Management Department and had no one working in risk management full time.

Additionally, on or about May 10, 2018, Cachet observed that MyPayroll was using Cachet's services to execute multi-million-dollar transfers that went through Cachet's settlement account but which did not appear to be payroll-related; the recipients of these transfers, as identified by Ms. Succar in an email, included "P2binvestor for Weitz" and "Millennium Funding."[1] A MyPayroll representative responded by email that these transfers were "vendor payments that are for 1099 contractors that get processed through our payroll system." Ms. Succar replied, "Please be advised Cachet does not service accounts payable transactions. Therefore, the transactions in question should be suspended and/or cancelled." After another email from the MyPayroll representative, Ms. Succar responded that "Per our conversation, MyPayrollHR will cancel the 9 vendor transfer files and will handle the payments via wire. In the mean time Cachet will put together a Merchant agreement for your review to be able to assist for future merchant/vendor transactions." At this point, after multiple violations of Cachet policy going back several years, Cachet did not consider terminating MyPayroll as a client. Cachet never presented MyPayroll with a "Merchant agreement for your review."

Thereafter, Cachet continued to regularly process what it believed to be merchant vendor and accounts payable transactions, sometimes in the millions of dollars per day.

### B. Alyssa Daversa

As the Government has previously informed Cachet, financial analyst Alyssa Daversa will be called to testify on two discrete topics:

---

[1] These were two of Mann's institutional victims, identified in Mann's plea agreement as Financing Companies.

- The banking and transactional activity that took place in the Seized Accounts in the year prior to the collapse of Mann's fraudulent scheme; and

- The characteristics and volume of non-payroll transactions that Cachet processed at the request of Michael Mann and/or his companies.

Cachet has deposed Ms. Daversa, and the Government has disclosed to opposing counsel both the financial analysis that Ms. Daversa has conducted for this matter, as well as the records she analyzed.

As to the first topic, Ms. Daversa is expected to testify that her review of each of the Seized Accounts, covering August 1, 2018 through the collapse of the Mann Companies in September 2019 – a time period chosen as a sample – shows that each account was the subject of regular, large-volume deposits and withdrawals, with positive and negative account balances that fluctuated wildly, consistent with Mann's admission, in his plea agreement, that he used the Seized Accounts as part of a kiting scheme and to otherwise facilitate the offenses of conviction. Ms. Daversa is also expected to testify as to the amount of times and the approximate dates that Mann used Cachet's services to transfer funds into and out of each Seized Account, including prior to August/September 2019.

As to the second topic, Ms. Daversa is expected to testify as to her review of spreadsheets produced by Cachet in discovery in this matter. The spreadsheets, according to Cachet, show each instance in which Mann used Cachet's services to conduct a transaction that Cachet now believes was a non-payroll transaction, from April 1, 2018 through September 3, 2019 (a time period that the Government chose as a sample). Ms. Daversa is expected to testify that Mann used Cachet's services to execute non-payroll transfers totaling $2.74 billion during the approximately 18-month

11

sample time period.[2]  Ms. Daversa will also testify to the total amount of non-payroll transfers that were sent from or to each Seized Account, during the relevant time period.

### IV.    Legal and Evidentiary Issues That May Arise During the Hearing

#### A.    A Hearing Witness's Deposition Testimony Can Be Used to Refresh Recollection, or, if Inconsistent with Trial Testimony, to Impeach and as Substantive Evidence of Matters Asserted in the Deposition.

Hearing witness Hanan Succar previously testified at a deposition.  If she testifies at hearing about a failure to recall a matter that she described during her deposition testimony, the Government may seek to refresh her memory, impeach her, and/or introduce her prior deposition testimony as substantive evidence.  These approaches are not exclusive of each other.  *See LeClair v. Raymond*, No. 1:19-CV-28 (BKS/DJS), 2022 WL 219609, at *8 (N.D.N.Y. Jan. 25, 2022) ("Ms. Whipple's deposition may be admissible for impeachment . . . or it may be used, as appropriate, to refresh her recollection.").  Ms. Succar has reviewed and signed her deposition transcript.

**Refreshing Recollection:**  If a witness cannot recall a matter about which she once had knowledge, the questioning party can attempt to refresh the witness's recollection, including by use of a transcript of the witness's deposition testimony.  *United States v. Natale*, 526 F.2d 1160, 1171 (2d Cir. 1975) (explaining that if a witness's trial "testimony had surprisingly been unfavorable, the defense would have been entitled to examine and use the grand jury transcript to refresh the witness's recollection or to impeach his testimony"); *see also United States v. Gil*, 297 F.3d 93, 104 (2d Cir. 2002) (recognizing that a writing could be "an effective tool in disciplining witnesses during cross-examination by refreshment of recollection or otherwise").  When a party uses a writing at trial to refresh a witness's recollection, "an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness about it, and to

---

[2] As will be explained at the hearing, there is an alternate way of totaling the transfers that yields a total of half this amount, $1.37 billion, which would still be significant.

introduce in evidence any portion that relates to the witness's testimony."  Fed. R. Evid. 612(b).

Thus, all that is required to refresh recollection is testimony from a witness that an item will help

him recall and that the opposing party had an opportunity to review a writing used to do this.  *Maus*

*v. Baker*, 641 Fed. App'x 596, 600 (7th Cir. 2016) ("The nurse testified that the medical records

(which she created) would help her recall the events of January and April 2007. And Maus had a

chance to review those records before the nurse refreshed her recollection with them. *See* Fed. R.

Evid. 612(b). That is all the rules of evidence require for the admissibility of refreshed

recollection.").

 **Impeachment:**  In addition to using deposition testimony to refresh recollection, if the

deposition testimony and hearing testimony are inconsistent, including due to a failure to recall, a

party may use the deposition testimony to impeach the witness, that is, establish that the witness

made an inconsistent statement on an earlier occasion.  *Marshall v. Randall*, 719 F.3d 113, 117

(2d Cir. 2013) (rejecting challenge to use of grand jury testimony to attack the credibility of hostile

witnesses).  Under Fed. R. Evid. 613(a), "[w]hen examining a witness about the witness's prior

statement, a party need not show it or disclose its contents to the witness. But the party must, on

request, show it or disclose its contents to an adverse party's attorney."  When the earlier statement,

such as a transcript of deposition testimony, is inconsistent with trial testimony, extrinsic evidence

of the earlier statement "is admissible only if the witness is given an opportunity to explain or deny

the statement and an adverse party is given an opportunity to examine the witness about it, or if

justice so requires."  Fed. R. Evid. 613(b).

 **Substantive Use:**  Although an out-of-court statement by a witness who testifies at trial

generally is subject to the rule against hearsay, an exception for a trial witness's prior inconsistent

statements applies under certain circumstances.  Specifically, Fed. R. Evid. 801(d)(1)(A) provides

that an out-of-court statement offered to prove the truth of the matter it asserts is "not hearsay"
when "[t]he [out-of-court] declarant testifies [at trial] and is subject to cross-examination about a
prior statement, and the statement . . . is inconsistent with the declarant's testimony and was given
under penalty of perjury at a trial, hearing, or other proceeding or in a deposition." Fed. R. Evid.
801(d)(1)(A).   A witness's professed inability to recall at trial the substance of the witness's
deposition testimony is "inconsistent." *See United States v. Truman*, 688 F.3d 129, 142 (2d Cir.
2012) ("[W]e now join all of our sister courts that have addressed the question in holding that
where, as here, a witness who testifies under oath and is subject to cross-examination in a prior
state court proceeding explicitly refuses to answer the same questions at trial, the refusal to answer
is inconsistent with his prior testimony and the prior testimony is admissible under Rule
801(d)(1)(A)").

### B.  Summary Witness and Summary Charts

The Government plans to offer, as exhibits, (1) summaries of bank statements and
transaction records, and (2) summaries of transaction records produced by Cachet, to be admitted
via the testimony of financial analyst Alyssa Daversa.

These summaries are admissible under Rule 1006 of the Federal Rules of Evidence, which
provides:

> The proponent may use a summary, chart, or calculation to prove the content of
> voluminous writings, recordings, or photographs that cannot be conveniently be
> examined in court.  The proponent must make the originals or duplicates available
> for examination or copying, or both, by other parties at a reasonable time and place.
> And the court may order the proponent to produce them in court.

Fed. R. Evid. 1006.  Rule 1006 "allows admission of summaries when '(1) the evidence previously
admitted is voluminous, and (2) review by the jury would be inconvenient.'" *Aktas v. JMC Dev.
Co., Inc.*, No. 1:09-CV-01436 (MAD), 2013 WL 55827, *2 (N.D.N.Y. Jan. 3, 2013) (quoting
*United States ex rel. Feldman v. Van Gorp*, No. 03-cv-8135 (WHP), 2010 WL 2911606, at *6

(S.D.N.Y. July 8, 2010)); *cf. United States v. Milkiewics*, 470 F.3d 390, 396 (1st Cir. 2006) (holding "that summaries that are otherwise admissible under Rule 1006 are not rendered inadmissible because the underlying documents have been admitted, in whole or in part, into evidence").

"A summary must of course be based on foundation testimony connecting it with the underlying evidence summarized, and must be 'based upon and fairly represent competent evidence already before the jury.'" *Fagiola v. Nat'l Gypsum Co. AC &S, Inc.*, 906 F.2d 53, 57 (2d Cir. 1990) (internal citation omitted) (quoting *United States v. Conlin*, 551 F.2d 534, 538 (2d Cir. 1971)). The Second Circuit has "regularly affirmed" the use of summaries under Rule 1006. *United States v. Blackwood*, 355 Fed. App'x 207, 212 (2d Cir. 2010).

Here, the government will introduce summary charts through a witness familiar with the underlying documents and how the charts were prepared.  Ms. Daversa, a retired federal agent, will testify about summary charts that she has prepared in connection with the case.  Cachet already possesses the documents that the charts will summarize, and the Government can provide copies of all of these documents to the Court, upon request.

**C.  Judicial Notice of Other Cases Over the Same Operative Set of Facts.**

A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation but to establish the fact of the litigation and related filings.  *Morgan v. Hartman*, No. 23-7336-CV, 2025 WL 615166, at *2 (2d Cir. Feb. 26, 2025) (summary order); *Carlisle v. Bd. of Trs. of Am. Fed'n of New York State Teamsters Conf. Pension & Ret. Fund*, No. 21-CV-455 (BKS), 2025 WL 438123, at *14 (N.D.N.Y. Feb. 7, 2025).  Cachet is a party to several other lawsuits against numerous entities over the same operative facts involving money that was subverted by Mann, In re. Cachet Financial Services, Bankr. No. 2:20-bk-10654-VZ (Bankr. C.D. Cal.):

- Cachet Financial Services v. Pioneer Bancorp Inc., et al., 2:22-ap-1029-VZ (Bankr. C.D. Cal.). (pending)

- Cachet Financial Services v. P2BI Holdings, LLC 2:22-ap-1028-VZ (Bankr. C.D. Cal.) (dismissed)

- Cachet Financial Service v. AXOS Bank, 2:22-ap-1025-VZ (Bankr. C.D. Cal.) (dismissed)

- Cachet Financial Services v. MyPayrollHR, et al., 1:19-cv-1181 (N.D.N.Y.)

**D. The Government Will Seek Exclusion of a Document to be Offered by Cachet**

The Government expects that Cachet will seek to admit a 12-page document titled "2018 ACH Rules Compliance Audit Cachet Financial," dated October 30, 2018, and authored by WesPay Advisors. Cachet produced this document on September 26, 2025, the same date it asked the Government to stipulate to the authenticity and admissibility of this document.

The Government intends to seek exclusion of this document on several grounds. First, the document is hearsay and no hearsay exception seems to apply. Second, Cachet President Aberash Asfaw, in her deposition, testified in pertinent part that Cachet underwent yearly WesPay audits from 2013 through 2019, yet Cachet (i) has produced an audit only for 2018; (ii) has confirmed that there was no audit for 2019; and (iii) has not produced the backup documentation and communications supporting the 12-page audit document for 2018 that it did produce.

Third, the document was not timely disclosed. The Court ordered the parties to submit initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) no later than June 22, 2024, dkt. no. 171, and the parties have continued supplementing those disclosures since then. While the Court did not designate a specific end date for discovery, Cachet was required to supplement its disclosures in a "timely manner." Fed. R. Civ. P. 26(e)(1). Disclosing a document 18 days before the hearing

16

is not timely, is unfair surprise, and exacerbates the hearsay issue.  When a party fails to provide information as required by Rule 26(a), the party is not allowed to use that information at a hearing.  Fed. R. Civ. P. 37(c).  Exclusion under Rule 37 is automatic unless the party who failed to disclose "can demonstrate substantial justification for the failure to disclose or that the failure to disclose is harmless."  *Peck v. Cnty. of Onondaga, New York*, No. 21-CV-651 (MAD), 2025 WL 330496, at *5 (N.D.N.Y. Jan. 28, 2025)  When considering whether to exclude evidence pursuant to Rule 37, this Court must consider (1) the non-disclosing party's explanation for the failure to comply with the Federal Rules, (2) the importance of the evidence, (3) the prejudice suffered by the opposing party of having to prepare to meet the new evidence, and (4) the possibility of a continuance.  *Peck*, 2025 WL 330496, at *5; *Rizzo v. Health Rsch., Inc*., No. 12-CV-1397 (GTS), 2016 WL 632546, at *11 (N.D.N.Y. Feb. 16, 2016) (citing *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006)).

Cachet has apparently had this document since 2018, and Cachet has not offered any reason it could not have been disclosed earlier.  The evidence is not particularly important to Cachet's claim that it is the beneficiary of a constructive trust over the Seized Funds.  The first time the Government learned that this type of document existed was during the deposition of Asfaw, who testified on June 17, 2025, that WesPay performed *annual* audits of Cachet's policies, procedures, and transactions. Cachet has not adequately explained why it only produced the 2018 audit report about three and a half months after Asfaw's testimony.[3]

---

[3] On September 12, 2025, the Government issued a single, supplemental document request seeking "[a]ll portions of WesPay audits (as referenced by Aberash Asfaw in her June 17, 2025 deposition testimony, Tr. 29:3-25), conducted of Cachet, that reference or concern Michael Mann, any Mann Company, or any client's or customer's use of Cachet's services for non-payroll transactions." The 2018 audit document is not responsive to this request because it mentions none of these things; nevertheless, the Government's document request appears to be what prompted the late disclosure of the 2018 audit document.

The Government is prejudiced by this late disclosure because there is no time to issue a document subpoena to WesPay or to take the company's testimony and learn why Wespay's pre-2019 audits did not detect Mann's activities, nor can the Government learn whether Mann's fraud, once discovered, changed WesPay's assessment of Cachet's policies, procedures, and transactions. This factor highlights why the only witness competent to testify regarding WesPay's knowledge of Cachet is someone from WesPay. If WesPay had evidence that Cachet intended to rely on, Cachet should have disclosed that evidence long ago. A self-selected report offered to show that Cachet was compliant with ACH requirements is hearsay that prejudices the Government's ability to challenge the asserted fact.

Finally, as the Court has made clear, there is no possibility of a continuance, nor should the Court entertain one, as numerous victims are awaiting a resolution of this matter.

### V.      Conclusion

Through this memorandum the United States has attempted to summarize those principles of law that it believes to be applicable in resolving issues that the Court may encounter during the hearing. The United States respectfully requests an opportunity to submit additional legal authority in connection with such other issues that may arise.

Dated: October 3, 2025                              Respectfully submitted,

                                                                    JOHN A. SARCONE III
                                                                    Acting United States Attorney

                                                                    */s/ Michael Barnett*
                                                                    _____

                                                                    Michael Barnett
                                                                    Christopher R. Moran
                                                                    Assistant United States Attorneys
                                                                    Bar Roll Nos. 519140 and 700767